**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John SMITH Defendant–Appellant.**

**No. 03–4277.**

United States Court of Appeals, Seventh Circuit.

Argued July 7, 2004.

Decided Aug. 20, 2004.

---

Rita M. Rumbelow, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Joseph L. Sommers, Madison, WI, for Defendant–Appellant.

Before CUDAHY, COFFEY, and ROVNER Circuit Judges.

### ORDER

John Smith pleaded guilty to possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1), (b)(1)(C). In the plea agreement Smith reserved the right to challenge the denial of his motion to suppress evidence seized from his apartment, and he argues here that the district court should have suppressed the evidence because, he says, the police initially entered the apartment illegally even though later they obtained a search warrant. We reject Smith's argument because the police seized nothing until other officers who were not involved in that first entry had obtained a search warrant based solely on information derived independently of the initial entry.

On April 23, 2002, in Dane County, Wisconsin, an undercover police officer who had been watching Smith saw him park his car at a Kohl's food store, walk up to another car parked in the lot, and lean into the car to talk to the driver. Moments later another police officer stopped the driver of the second car at a nearby gas station, and in the course of a consensual search discovered a folded piece of aluminum foil containing heroin that the driver claimed Smith had just sold to him.

Meanwhile, other police officers stopped Smith as he exited from Kohl's, told him he was being detained in a drug investigation, and searched him with his consent. In his coat pocket officers found eleven pieces of folded aluminum foil containing heroin. At the time, Smith maintained that he "didn't even know those were in there" and "forgot they were there." But later at the police station Smith admitted that he bought the heroin from a person at McDonald's earlier that night. He denied going to his apartment after purchasing the heroin, contradicting the observations of the officers who had been following him. On the basis of Smith's post-arrest statements and the observations of the officers, the police obtained a warrant to search Smith's apartment. Smith does not challenge the validity of the warrant.

While awaiting the issuance of the warrant, Officer Christine Boyd and another officer went to Smith's apartment complex and waited in the hallway near his apartment. Shortly after arriving, Boyd encountered a man leaving Smith's apartment and stopped him. He identified himself as Anthony Martin and told Boyd that he didn't live there, and that the defendant's two sisters, Thelma and Cheryl, and the defendant's nephew, William, were still inside. Boyd told him that Smith had been arrested on a drug charge and that other officers were in the process of obtaining a warrant to search the apartment.

At the suppression hearing Officer Boyd testified that she feared having told Martin too much, and that he might alert the remaining occupants of the apartment to the impending search and prompt them to destroy evidence before the warrant arrived. What happened next is disputed. Boyd testified that she knocked on the apartment door and received permission to enter. Thelma Smith, who answered the door, testified by affidavit (she was not present for the suppression hearing) that Boyd did not have permission. The district court never resolved this dispute.

After searching the occupants, Officer Boyd and two other officers who had arrived on the scene announced they would stay in the apartment until the expected

warrant arrived, and "advised" the occupants to leave. Cheryl and William opted to leave, but Thelma stayed. Boyd followed as Cheryl went into a bedroom and retrieved first her jacket, and then a glass pipe that Boyd confiscated. Cheryl and William then left, and the three officers conducted a "protective sweep" of the apartment. They looked in closets, underneath the bed, and other places where a person could be hiding, and checked the couch where Thelma was sitting for a weapon, but found no contraband.

Four hours later police obtained the warrant and fully searched the apartment. Under the couch in the living room was an unloaded .357 caliber Arminius revolver. In Smith's bedroom were eleven .357 Magnum rounds. Under his bed was a lockbox containing 33.51 grams of heroin, $1,465 in currency, aluminum foil cut in three-by-three-inch pieces, a digital scale, a postal scale, and a membership card in his name. In the bathroom under the sink were two socks containing marijuana and crack. And throughout the apartment were more pieces of aluminum foil, cut drinking straws, razor blades, and metal spoons.

Smith argued in the district court that "any distinction between the so-called 'protective sweep' and the search that allegedly began after the obtaining of a search warrant is artificial." Smith reasoned that during the protective sweep the officers must have seen at least some of the contraband eventually seized pursuant to the warrant. Therefore, Smith argued, all the evidence obtained from his apartment should have been suppressed because the "protective sweep" was unlawful: 1) Thelma did not consent to the entry, but even if she did the police could not reasonably have believed she had authority to consent because she told them she did not live there; 2) even if she validly consented to the entry, the "protective sweep" exceeded the scope of the consent; and 3) exigent circumstances did not justify the warrantless entry because the asserted exigency was created by Officer Boyd.

The district court denied Smith's motion to suppress on the ground that any illegality stemming from the initial entry was "irrelevant" because the search warrant provided an independent source for the seizure of the evidence, and there was no basis to conclude that the initial entry had tainted the acquisition of the warrant. On appeal Smith presses the same argument for suppression that he did in the district court: that the initial entry was illegal and that any distinction between the protective sweep and the search with the warrant is "artificial." The government responds that all the evidence was seized with a valid warrant "obtained on the basis of information wholly unconnected with the initial entry."

The government's argument is correct. Absent exigent circumstances, the Fourth Amendment prohibits entering a house without a warrant, and so Officer Boyd's warrantless entry was presumptively, although not necessarily, unlawful. *Payton v. New York*, 445 U.S. 573, 585–86, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002); *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir.2001). We do not endorse the district court's failure to assess the legality of the initial entry because ignoring an entry of dubious validity affords no guidance to police for future investigations. Nevertheless, whether or not the initial entry is defensible, suppression is warranted only where police seize evidence illegally. *Murray v. United States*, 487 U.S. 533, 536, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Here, even assuming the illegality of the initial entry and thus the "protective sweep" that followed, it is undisputed that

police discovered none of the evidence Smith seeks to suppress, during the "protective sweep." Rather, police seized every piece of evidence Smith sought to suppress only after they obtained a warrant. Moreover, even if the police had seen some contraband during the initial entry, suppression would not follow unless the information relied on in seeking the warrant was tainted by the initial entry. *Murray,* 487 U.S. at 542–43; *United States v. Markling,* 7 F.3d 1309, 1315–16 (7th Cir. 1993); *see United States v. Brown,* 328 F.3d 352, 357–58 (7th Cir.2003). The crack pipe—the sole item of apparent contraband noticed by the officers who first entered the apartment—was not mentioned in the five-page affidavit in support of the warrant. Because the warrant was obtained independently of the alleged illegality, the district court did not err in denying Smith's suppression motion. *See United States v. Johnson,* 170 F.3d 708, 713 (7th Cir.1999).

AFFIRMED.