# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1341

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Richard Lee Paine, Sr., | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 29, 2004
Filed: May 18, 2005

_____

Before BYE, BEAM, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

In this direct criminal appeal, Richard Lee Paine, Sr., appeals the district court's[1] finding he "otherwise used" rather than "brandished" a firearm within the meaning of United States Sentencing Guidelines § 2B3.1(b)(2)(B) during a June 15, 2002, bank robbery. He also appeals the district court's finding he "used or attempted to use" his sixteen-year-old son within the meaning of U.S.S.G. § 3B1.4 during the commission of the robbery. We affirm.

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

# I

On June 15, 2002, the O'Bannon Bank in Dallas County, Missouri, was robbed by two males wearing baseball caps and sunglasses. The FBI arrested Paine and charged him with robbery by force, violence and intimidation, and with committing the robbery by assaulting and putting in jeopardy the life of a bank employee by use of a handgun, in violation of 18 U.S.C. § 2113(a) and (d). On October 14, 2003, he pleaded guilty pursuant to a written plea agreement. On February 3, 2004, a sentencing hearing was held wherein he was sentenced to 70 months imprisonment. As part of the plea agreement, the parties stipulated to the following facts.

> Around 11:00 a.m. on Saturday, June 15, 2002, Defendant and his son (who at the time was sixteen years old) entered the O'Bannon Bank, Gem Center Branch, Old Highway 65 South, Dallas County, Missouri wearing caps and sunglasses. The Gem Center Branch is located near Fair Grove, Missouri. Defendant and his son approached a teller, and Defendant pulled a handgun from his waistband and pointed the handgun at the teller. Defendant said words to the effect "This is a stick up. Hand me your large bills." After a short pause, Defendant said words to the effect "I mean it. This is a stick up. Give me your large bills." A short time later, Defendant asked the teller if she had hit any alarms. The teller removed currency from her teller drawer and placed the currency on the teller counter. Defendant took the currency and placed the currency in a plastic bag. Defendant and his son then left the bank with the currency. Defendant took $3,300 in the robbery. Defendant and his son were photographed by the bank's surveillance cameras.
>
> At the time of the robbery, O'Bannon Bank's deposits were insured by the Federal Deposit Insurance Corporation.

On Monday, September 15, 2003, Defendant, after being advised of his *Miranda* rights, stated in writing he and his son "entered the O'bannon [sic] Bank in Fair grove [sic] Mo., and I robbed the bank for $3,200. I used an unloaded Colt 45 pistol . . . . it [sic] was all my idea and not my sons [sic] idea, he had no idea that I was going to rob this bank . . . ." Defendant also identified himself in surveillance photographs of the robbery.

Defendant agrees these facts are true except that Defendant states he did not remove and point the handgun at the teller until the teller paused after Defendant first stated "This is a stick up. Hand me your large bills."

At sentencing, the following testimony was received,

THE COURT: What are the facts of the – I think I read in the presentence investigation report that maybe Mr. Paine had said that he didn't point it at the teller till she didn't respond to his first command or something and then pointed it?

MS. LEONARD: Yes, Your Honor, if you – actually, in the plea agreement there's a stipulation to the facts in Paragraph 2 and it's – it was his recollection that he did not remove and point the handgun at the teller until she paused after he first said, "This is a stick-up. Hand me your large bills."

Her recollection, I believe, was that he pulled the handgun from his waistband and pointed the handgun at her and said words to the effect, "This is a stick-up," and then when she didn't believe him, said, "I mean it. This is a stick-up." So those are the facts that were stipulated to in the plea agreement.

-3-

THE COURT: But the defendant is agreeing that after she didn't respond at first, he then removed, I guess from his, what, waist –

DEFENDANT PAINE: Yes.

THE COURT: – I'm not sure of the picture, but – and pointed the handgun at the teller with further direction. Is that what I'm reading here in the set of facts?

MS. LEONARD: Yes. His recollection was he pulled it out after she did not believe him that it was a stick-up, yes.

Additionally, the government offered into evidence four photographs taken by surveillance cameras showing Paine and his son during the robbery. The photographs show Paine and his son standing at the teller window wearing baseball caps and sunglasses. The photographs show him holding the gun and pointing it at the teller with his finger on the trigger. Finally, they show he and his son standing only a few feet from the teller - across the teller window - during the course of the robbery. Paine stipulated the photographs were taken during the course of the robbery and he identified himself in the photographs.

Paine admitted his actions amounted to brandishing a firearm (a five-level enhancement) but argued the evidence was insufficient to prove he otherwise used the weapon (a six-level enhancement) during the robbery. Based on the evidence, the district court concluded,

THE COURT: Well, I admit, the cases probably leave us with not a lot of guidance there, but based on what I understand the facts to be, in looking at these pictures, it's clearly shown, Mr. Paine, with your hand on the gun and looks like finger on the trigger. And if it was pulled out and pointed at the teller after she didn't respond the first time, that seems like it's a pretty fair inference that that was

-4-

meant to convey a threat if something didn't – if she didn't respond in the way you wanted to.

So I find it's otherwise used. I find it's something more than just showing that you happened to have a gun in your pocket or in your belt when you pulled it out and pointed it to [sic] her to get her to give you the money.

Next, Paine argued his offense level should not be enhanced an additional two levels because the evidence was insufficient to show he "used or attempted to use his [sixteen-year-old son] to commit the offense or assist in avoiding detection of, or apprehension for, the offense." To rebut his arguments, the government focused on the photographs, and offered this additional stipulation,

THE COURT: All right. What's the government say?

MR. BUNCH: Your Honor, by way of evidence, one other fact that I believe the parties are prepared to stipulate to is that Mr. Paine informed FBI special agent David Burlew at the time he was arrested that the reason he had asked his son to go with him is although his son did not know, according to Mr. Paine, that he was going to rob the bank, that he wasn't brave enough to commit the robbery by himself and so he wanted his son to go in order to give him the courage to commit the robbery.

Is that something that Mr. Paine can stipulate to or would you like for me to call Agent Burlew?

MS. LEONARD: I think that that's in the reports, that you told the FBI that in the initial interview?

DEFENDANT PAINE: Yeah.

Based on this evidence, the district court concluded,

THE COURT: Well, again, I've got these four pictures here, and it – I have to do my own evaluation of it. When I look at these pictures, the son does not look to me like he's surprised that his dad is standing there with a gun. In fact, he looks very calm standing at the teller window as if he's a participant in this robbery. It's clear that the father got his son there by directing him, encouraging him, recruiting, soliciting, however you want to label it. The son didn't just happen to show up there as a coincidence. And it appears clear to me that the defendant did use his son. And whether or not that was to commit the offense or to avoid apprehension because of numbers, all I can say is that judging the pictures and the statement that was made, I find that it's proper to enhance by the two levels for using a minor to commit the crime.

On appeal, Paine argues there were insufficient facts to support the district court's application of the six-level enhancement for "otherwise using" a firearm instead of a five-level enhancement for "brandishing" a firearm. He also argues there were insufficient facts for the district court to apply a two-level enhancement for using his son in connection with the robbery. Finally, for the first time on appeal Paine argues his Sixth Amendment rights were violated because the factual bases for the enhancements were not submitted to a jury.

II

We review the district court's application of the Sentencing Guidelines de novo, United States v. Smotherman, 285 F.3d 1115, 1116 (8th Cir. 2002), and its findings of fact for clear error, United States v. Hart, 324 F.3d 575, 579 (8th Cir. 2003) (citation omitted). We need not, however, review the district court's independent findings of fact if the factual predicate necessary to justify a sentencing enhancement is derived from a defendant's factual admissions. In other words, if the facts admitted by Paine are sufficient to support the enhancement, any additional fact

-6-

findings by the district court are superfluous.  <u>United States v. Gomez</u>, 271 F.3d 779, 781 (8th Cir. 2001).  Similarly, his Sixth Amendment claim fails if he admitted the facts necessary to support the sentence imposed.  <u>United States v. Booker</u>, 543 U.S. — , 125 S.Ct. 738, 756 (2005) ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict *must be admitted by the defendant* or proved to a jury beyond a reasonable doubt.") (emphasis supplied).  Thus, we must determine whether his admissions provide an adequate factual basis to support the enhancements and to overcome his Sixth Amendment claim.

      A.     <u>U.S.S.G. § 2B3.1(b)(2)(B)  - "Otherwise Used" or "Brandished"</u>

Section 2B3.1(b)(2) of the United States Sentencing Guidelines provides,

> (A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished or possessed, increase by 3 levels; or (F) if a threat of death was made, increase by 2 levels.

Application Note 1 to § 2B3.1 states "otherwise used" and "brandished" are defined in the Commentary to U.S.S.G. § 1B1.1.  Application Note 1 to § 1B1.1 provides,

> (C) "Brandished" with reference to a dangerous weapon (including a firearm) means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person.  Accordingly, although

the dangerous weapon does not have to be directly visible, the weapon must be present.[2]

(I) "Otherwise used" with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.

In United States v. Hoelzer, 183 F.3d 880, 883 (8th Cir. 1999), this court upheld an "otherwise used" enhancement where the defendant used a gun to strike the victim in the head. In United States v. Elkins, 16 F.3d 952, 953-54 (8th Cir. 1994), we upheld an "otherwise used" enhancement where the defendant held a knife against the throat of a victim. We have not, however, had an opportunity to apply § 2B3.1(b)(2) in a factual scenario similar to this case since the November 1, 2000, amendment to Application Note 1(c) to § 1B1.1.

Other circuits, however, have directly faced this issue. In United States v. Cover, 199 F.3d 1270, 1278-79 (11th Cir. 2000), the court stated "[w]e agree with this definition and, like the majority of courts that have considered the question, find that the use of a firearm to make an explicit or implicit threat against a specific person constitutes 'otherwise use' of the firearm." Similarly, in United States v. Orr, 312 F.3d 141, 144-45 (3d Cir. 2002), the court addressed the difference between "brandishing" and "otherwise using" and concluded "pointing a gun at the head of the assistant manager and ordering her to empty money into a garbage bag was a 'specific threat' directed at her and was precisely the type of conduct which satisfies the 'otherwise used' requirement." In United States v. Warren, 279 F.3d 561, 563 (7th

---

[2]Prior to November 1, 2000, Application Note 1(c) to § 1B1.1 stated "'[b]randished' with reference to a dangerous weapon (including a firearm) means that the weapon was *pointed* or waved about, or displayed in a threatening manner." (emphasis supplied).

Cir. 2002), the court indicated "[w]e have affirmed 'otherwise used' adjustments when pointing a weapon at a specific victim created a personalized threat of harm." See also United States v. LaFortune, 192 F.3d 157, 161 (1st Cir. 1999) ("[I]t was the specific rather than the general pointing of the gun that elevated its use from mere 'brandishment' to 'otherwise used'"); United States v. Gilkey, 118 F.3d 702, 706 (10th Cir. 1997) (emphasizing the specific over the general threats to the victim); United States v. De La Rosa, 911 F.2d 985, 993 (5th Cir. 1990) (brandishing plus specific threats constitute otherwise using a weapon).

Notwithstanding these cases, Paine asks us to adopt the position advocated by the Second Circuit in United States v. Matthews, 20 F.3d 538, 554 (2d Cir. 1994), where the court held brandishing and pointing firearms at a victim while uttering explicit threats did not trigger the "otherwise used" enhancement. In light of the November 1, 2000, amendment to the application note, we conclude the precedential value of United States v. Matthews is greatly diminished. It is apparent the amendment was intended to include at least some instances involving pointing a weapon within the definition of "otherwise used."

Here, Paine was standing only two or three feet from the teller when he drew the weapon and pointed it directly at her. Paine admits he drew the weapon because the teller did not immediately respond when he told her: "This is a stick up. Hand me your large bills." After drawing the weapon, Paine, with his finger on the trigger of the gun, emphasized the threat saying: "I mean it." In doing so, he did more than display the gun. He employed the gun to convey a threat directed at this specific teller which was intended to intimidate her into complying with his demands.

We conclude Paine's admissions satisfy the factual predicate necessary to establish the gun was "otherwise used" in committing the robbery.

B.    U.S.S.G. § 3B1.4 - Paine's Use of His Son

Section 3B1.4 states: "If the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels." Application Note 1 states: "'Used or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." § 3B1.4, cmt. n.1.

Both Application Note 1 and cases applying § 3B1.4 make clear the "used or attempted to use" language requires the defendant to affirmatively involve or incorporate a minor into the commission of the offense. "Pursuant to the sentencing guidelines, the two-level § 3B1.4 increase is only applicable if a defendant directs, trains, or in some way affirmatively engages the minor participant in the crime of conviction." United States v. Suitor, 253 F.3d 1206, 1210 (10th Cir. 2001); United States v. Jimenez, 300 F.2d 1166, 1169 (9th Cir. 2002) ("The evidence must show that 'the defendant acted affirmatively to involve the minor' in the crime") (quoting United States v. Parker, 241 F.3d 1114, 1120 (8th Cir. 2001)); United States v. Castro-Hernandez, 258 F.3d 1057, 1060 (9th Cir. 2001) ("It is sufficient that the defendant took affirmative steps to involve the minor in a manner that furthered or was intended to further the commission of the offense."); United States v. Rivera, 248 F.3d 677, 682 (7th Cir. 2001) (same); United States v. Butler, 207 F.3d 839, 847 (6th Cir. 2000) (same).

Under § 3B1.4, "used or attempted to use" does not, however, require active involvement on behalf of the minor. Castro-Hernandez, 258 F.3d at 1060 (citing United States v. Warner, 204 F.3d 799, 801 n.2 (8th Cir. 2000) ("We agree that a minor's own participation in a federal crime is not a prerequisite to the application of § 3B1.4.")); see also Warner, 204 F.3d at 801 n.2 (finding no plain error in district court's application of § 3B1.4 where defendant "acted irresponsibly in bringing his young child on this nefarious junket. His offer to leave her in what might well have

been a dangerous situation to facilitate his criminal activity warrants a sentence enhancement.").

Here, Paine admitted he asked his son to accompany him on the robbery to provide moral support. He stated without his son present he would not have been able to follow through with his plan. Paine, however, contends the enhancement was unjustified because his son had nothing to do with nor did he know about the robbery.[3]

As noted above, Paine's son's knowledge of the robbery plan and his participation in the plan are not germane to our inquiry. "[T]he relevant inquiry is whether [Paine] took affirmative acts to involve [his son] in the commission of the offense. Rivera, 248 F.3d at 682 (citation omitted). It is, therefore, enough he admitted to asking his son to accompany him on the robbery because he would not otherwise have had the courage to commit the crime. In concluding the facts admitted by him are sufficient to support the district court's application of § 3B1.4, we are mindful "[t]he unambiguous legislative design of section 3B1.4 is to protect minors as a class from being 'solicited, procured, recruited, counseled, encouraged, trained, directed, commanded, intimidated, or otherwise used' to commit crime." United States v. McClain, 252 F.3d 1279, 1286 (11th Cir. 2001) (citing Violent Crime Control and Law Enforcement Act of 1994 § 140008(a); § 3B1.4, cmt. n.1 (2000)). As in Warner, we are convinced, by Paine's own admissions, his irresponsible act of

---

[3]Both Paine and his son donned baseball caps and sunglasses before entering the bank in an apparent attempt to conceal their identities. The photographs show Paine's son standing next to him as the pair huddled in front of the teller window. They also show Paine's son was in a position to see his father draw the weapon and hear him threaten the teller. Thus, we find Paine's claim his son was unaware of the robbery plan dubious. Nevertheless, we need not rely on any such inferences, no matter how reasonable, to conclude the district court's application of the sentencing enhancement was justified.

involving his son in a potentially life-threatening crime warrants this sentencing enhancement. 204 F.3d at 801.

Finally, we consider whether Paine's sentence, imposed under a mandatory sentencing scheme, is erroneous. See United States v. Pirani, No. 03-2871, slip op. at 6 (8th Cir. April 29, 2005) (en banc) (citing United States v. Antonakopoulos, 399 F.3d 68, 76 (1st Cir. 2005) ("The argument that a Booker error occurred is preserved if the defendant below argued Apprendi or Blakely error or that the Guidelines were unconstitutional.")). Here, Paine first raised Blakely in proceedings before this court. Thus, we review his sentence for plain error. Pirani, slip op. at 6.

Plain error review is governed by the four-part test of United States v. Olano, 507 U.S. 725, 732-36 (1993):

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Pirani, slip op. at 7 (quoting Johnson v. United States, 520 U.S. 461, 466-67 (1997)).

Paine has the burden of proving plain error. Olano, 507 U.S. at 734-35. "Appellate review under the plain-error doctrine, of course, is circumscribed and we exercise our power under Rule 52(b) sparingly." Jones v. United States, 527 U.S. 373, 389 (1999).

The first two Olano factors are satisfied here - the district court erred by applying the guidelines as mandatory and the error is plain. Pirani, slip op. at 8. "[W]here the law at the time of trial was settled and clearly contrary to the law at the

time of appeal – it is enough that an error be 'plain' at the time of appellate consideration." Johnson, 520 U.S. at 468.  As for the third factor, Paine must show a "reasonable probability that he would have received a more favorable sentence with the Booker error eliminated by making the Guidelines advisory."  Pirani, slip op. at 10.

We have reviewed the record on appeal and conclude there is no reasonable probability Paine can demonstrate the district court would have imposed a more favorable sentence but for the Booker error.  The district court sentenced him at the low end of the applicable guideline range but standing alone that fact is "insufficient . . . to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the Booker error."  Pirani, slip op. at 12.  Thus, we find no plain error.

### III

The order and judgment of the district court are affirmed.
_____