14-4149
*United States v. Speed*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**<u>SUMMARY ORDER</u>**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of November, two thousand fifteen.

Present:       ROBERT A. KATZMANN,
                            *Chief Judge*,
                     DENNY CHIN,
                            *Circuit Judge,*
                     P. KEVIN CASTEL,
                            *District Judge.*[*]

─────────────────────────────────────────────────────────

UNITED STATES OF AMERICA,

      *Appellee*,

           - v -                                              No. 14-4149

KASHIKA SPEED, AKA SHIKA,

      *Defendant-Appellant,*

THAMUD ELDRIDGE, AKA DAMU, KEVIN ALLEN,
AKA KILLER KEV, GALEN ROSE,

      *Defendants.*

─────────────────────────────

[*] The Honorable P. Kevin Castel, of the United States District Court for the Southern District of New York, sitting by designation.

For Appellee:                JOSEPH J. KARASZEWSKI, Assistant United States Attorney, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, NY.

For Defendant-Appellant:       RYAN THOMAS TRUSKOSKI, ESQ., Ryan Thomas Truskoski, P.A., Harwinton, CT.

Appeal from the United States District Court for the Western District of New York (Arcara, *S.J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,**

and **DECREED** that the judgment of the District Court is **AFFIRMED**.

Kashika Speed and three co-defendants were charged with eleven counts of racketeering, kidnapping, robbery, and other offenses in connection with an alleged criminal enterprise operating in the East Side of Buffalo, New York. Speed pled guilty to a single count of robbery under the Hobbs Act, 18 U.S.C. § 1951, as part of a plea agreement with the Government. The plea agreement contemplated a sentencing range of 151 to 188 months imprisonment, based on Speed's criminal history, the base offense level, and several adjustments. Speed agreed to waive his right to appeal any sentence within this range.

At sentencing, the District Court rejected the parties' calculations, and determined that a higher range was appropriate. In particular, the District Court agreed with the conclusion of the Probation Office's pre-sentence report that Speed's undisputed conduct constituted "otherwise using" a firearm—meriting a six-level increase under U.S.S.G. § 2B3.1(b)(2)(B)—rather than merely "brandishing" it, which merits a five-level increase. Based on that adjustment, the District Court calculated a sentencing range of 168 to 210 months, and sentenced Speed to 192 months imprisonment. Because that sentence exceeded the range stipulated to in the plea agreement, albeit by only four months, Speed was permitted to and did appeal.

2

Speed raises two claims on appeal. First, he alleges that that the District Court misunderstood its discretion to determine the appropriate sentencing range. Second, he contends that the District Court should have conducted an evidentiary hearing rather than rely on unproven allegations in the pre-sentence report and grand jury transcripts. Neither claim is persuasive.

First, Speed argues that the District Court did not recognize that it had the discretion to accept the guidelines range negotiated by the parties in the plea agreement. He acknowledges that the District Court had the discretion to reject the parties' stipulated range during sentencing. *See, e.g.*, *United States v. Woltmann*, 610 F.3d 37, 40 (2d Cir. 2010) ("It is a 'well-settled legal principle that the sentencing judge is of course not bound by the estimated range in a plea agreement.'" (quoting *United States v. Hamdi*, 432 F.3d 115, 124 (2d Cir. 2005)). Nonetheless, Speed contends that the District Court erred in believing that it was bound to accept the range calculated by the Probation Office in its pre-sentence report.

Speed's argument is contradicted by the record. The District Court clearly acknowledged its independent responsibility to calculate the appropriate sentencing range. *See* App. 133 ("[T]his Court has a duty and I don't know if anyone realizes that, that I have an obligation to calculate the correct application guidelines prior to imposing sentence."); App. 134 ("I have an obligation separate and distinct from your obligation as an attorney and the government's obligation . . . to make a proper calculation as to what the offense level is."). There is no indication in the record that the District Court believed itself to be bound by the recommendation in the pre-sentence report any more than it believed itself to be bound by the calculations in the plea agreement.

Second, Speed contends that the District Court erred by relying on unproven allegations in the pre-sentence report and grand jury transcripts, rather than conducting an evidentiary

hearing. "If an inaccuracy is alleged [in a pre-sentence report], the court must make a finding as to the controverted matter or refrain from taking that matter into account in sentencing." *United States v. Helmsley*, 941 F.2d 71, 98 (2d Cir. 1991).

However, Speed never objected to the factual accuracy of the pre-sentence report or to the District Court's description of his conduct. Instead, Speed's only objection was that the District Court should have accepted the substance of the plea agreement. Speed's written objection to the pre-sentence report stated that "Mr. Speed objects on the basis that the parties' stipulated guideline range does not include the 'used' enhancement." App. 118. In making that objection, Speed complained that he and the Government had agreed that his offense conduct warranted a "brandished" enhancement, but that "[b]ased on the very same evidence, Probation renders a different interpretation." *Id.* By acknowledging that the Probation Office based its recommendation on the "same evidence" as the plea agreement, Speed appears to have disclaimed any argument that the report was factually inaccurate.

The District Court relied on the same factual predicate as the parties and the Probation Office—the grand jury testimony—to find that "Speed . . . threatened to kill the victim unless he gave them money and drugs" and that Speed "press[ed] a firearm" into the victim's neck. App. 134. Speed did not challenge this finding at the sentencing hearing, did not request an evidentiary hearing, and did not otherwise ask to introduce additional evidence showing that he did not press a gun into the victim's neck. In the absence of a specific request for an evidentiary hearing, we review only for plain error. We find no such error here, given that the "district court is not required, by either the Due Process Clause or the federal Sentencing Guidelines, to hold a full-blown evidentiary hearing in resolving sentencing disputes. All that is required is that the court 'afford the defendant some opportunity to rebut the Government's allegations.'" *United*

4

*States v. Slevin*, 106 F.3d 1086, 1091 (2d Cir. 1996) (quoting *United States v. Eisen*, 974 F.2d 246, 269 (2d Cir. 1992)).

Finally, we note that the District Court did not plainly err in determining that Speed's conduct amounted to "otherwise using" rather than "brandishing" his weapon. Although Speed's appeal did not directly challenge that determination, we *nostra sponte* requested that the parties submit supplemental briefing to clarify the applicability of *United States v. Matthews*, 20 F.3d 538 (2d Cir. 1994). This Court held in *Matthews* that otherwise using a firearm must mean something more than merely threatening a victim with a firearm:

> When a robber points a gun, or what appears to be a gun, at a robbery victim or bystander, that gesture is inherently threatening. And we should not have to point out, for it is tautological, that there can be no "display[ ] [of the gun] in a threatening manner," Note 1(c), without an implicit threat. Coupling that implicit threat with the utterance of an explicit verbal threat may constitute additional conduct, but it does not, in our view, constitute additional use of the weapon. Since the robbers here were not shown to have done anything more with their weapons than to brandish and point them menacingly, we conclude that the three-level enhancement provided for brandishing in § 2B3.1(b)(2)(E), rather than the four-level enhancement provided in § 2B3.1(b)(2)(D) for other use, should have been applied to [the defendants].

*Id.* at 554.

Speed argues in his supplemental briefing that because his conduct was "directly analogous" to Matthews', the District Court erred in holding that Speed "used" rather than "brandished" his firearm. Appellant's Suppl. Br. 4. But even assuming Speed's conduct was similar to Matthews'—a generous assumption given the difference between Matthews pointing a firearm at his victims for a few minutes and Speed pressing a firearm into his victim's neck for several hours—the precedential value of *Matthews* has likely "diminished" because of changes in the sentencing guidelines over time. *See United States v. Paine*, 407 F.3d 958, 964 (8th Cir. 2005). The application note to the sentencing guideline defining "brandishing" was amended in

5

2000, after *Matthews* was decided but before Speed robbed his victim at gunpoint. Before 2000, the application note stated that "'[b]randished' with reference to a dangerous weapon (including a firearm) means that the weapon was *pointed or waved about*, or displayed in a threatening manner." *Id.* at 963 n.2 (emphasis added). The amendment struck the word "pointed," replacing the definition of "brandishing" with the following: "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. . . ." *Id.* at 963. The definition of "otherwise used" was not altered: "'Otherwise used' with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." *Id.* As the Court discussed in *Paine*, "[i]t is apparent the amendment was intended to include at least some instances involving pointing a weapon within the definition of 'otherwise used.'" *Id.* at 964. Based on that clarification to the guidelines, we do not find plain error in the District Court's determination that Speed "otherwise used" a firearm when he pressed it into his victim's neck and threatened to kill him, and did not merely brandish it.

Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.
.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

6