# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3101

_____

United States of America

*Plaintiff - Appellee*

v.

Kenneth Wayne Fisher, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: April 3, 2017
Filed: July 3, 2017

_____

Before SMITH, Chief Judge, ARNOLD and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Kenneth Fisher pled guilty to an Arkansas bank robbery, in violation of 18 U.S.C. § 2113(a). The district court sentenced him to 150 months imprisonment after applying a two-level enhancement to the United States Sentencing Guidelines offense level for using a minor to commit the crime. Having jurisdiction under 28 U.S.C. § 1291, we reverse and remand for resentencing.

# I. Background

On August 28, 2015 in Bentonville, Arkansas, Fisher slipped a note to a bank teller reading:

> "Give me the money.  This is not a joke.  I am very serious."

The teller handed over $961 after Fisher said, "I'm not kidding."  Fisher ditched his cap and shirt nearby as he left the bank.  A fifteen-year-old female runaway (hereinafter "M.T.") waited in the getaway car during the robbery.

DNA evidence from his discarded shirt and surveillance video footage were used to identify Fisher.  He was arrested about three months later when he ran out of gas during a high-speed chase following a traffic stop in California.  M.T. was a passenger in Fisher's car at the time of his arrest.

Fisher, a thirty-nine year old man with a significant criminal history, first met M.T. at a Dunkin' Donuts in Colorado five months prior to his arrest.  After meeting, Fisher and M.T. traveled around the country on a crime spree that allegedly included bank robberies in Kansas, Wyoming, and New Mexico—in addition to the Arkansas robbery. M.T. was sexually abused by her father at a young age and spent most of her life in foster homes prior to running away from a group foster home in Colorado just before meeting Fisher.  During the investigation, M.T. said she was in love with Fisher.  She admitted using Google Maps to plot entry and exit routes for some of the robberies in other states, but not the robbery in Arkansas.  Fisher described M.T. as his "sidekick," "best friend," "co-pilot," and "navigator" during their travels together.

Fisher purchased the car used during the trip and registered it in the name, "Jenna Miller," matching a driver's license that he had stolen.  M.T. also used the name "Jenna Miller" as her alias.

Fisher pled guilty to bank robbery, in violation of 18 U.S.C. § 2113(a), in the Western District of Arkansas. The district court found that Fisher "use[d] [M.T.] who participated in this entire crime spree, including procurement of the getaway car and . . . as his 'navigator' . . . to assist in the entry route and the getaway route from the robbery" and applied a two-level enhancement under USSG § 3B1.4.

## II. Analysis

"In reviewing a challenge to a sentence, we must first ensure that the district court committed no significant procedural error." United States v. Timberlake, 679 F.3d 1008, 1011 (8th Cir. 2012) (internal quotation marks omitted). Significant procedural errors include mistakes such as "failing to calculate (or improperly calculating) the Guidelines range" or "selecting a sentence based on clearly erroneous facts." Gall v. United States, 552 U.S. 38, 51 (2007). In the analysis for procedural error, "[w]e review de novo the district court's application of § 3B1.4, and its findings of fact for clear error." United States v. Jones, 612 F.3d 1040, 1048 (8th Cir. 2010) (citing United States v. Paine, 407 F.3d 958, 963 (8th Cir. 2005)).

USSG § 3B1.4, "Using a Minor to Commit a Crime," reads:

> If the defendant *used or attempted to use* a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, *increase by 2 levels*.

(emphasis added). "Used or attempted to use" is defined as "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." USSG § 3B1.4, cmt. n.1.

Here, the district court applied the two-level enhancement because it found that Fisher "use[d] the minor who participated in this entire crime spree" because: (1) he described M.T. as his "navigator" on their five month cross country trip; (2) M.T. assisted in mapping the entry and getaway routes for some of the robberies using Google Maps on her phone; and (3) M.T.'s alias was used in "procurement of the getaway car."

Section 3B1.4 should only be applied when the defendant affirmatively acted to involve the minor in the offense. United States v. Mentzos, 462 F.3d 830, 841 (8th Cir. 2006) ("[T]he defendant must affirmatively involve or incorporate the minor into the commission of the offense."); Paine, 407 F.3d at 965 ("'Used or attempted to use' . . . requires the defendant to affirmatively involve or incorporate a minor into the commission of the offense. . . . [T]he two-level § 3B1.4 increase is only applicable if a defendant directs, trains, or in some way affirmatively engages the minor participant in *the crime of conviction*.") (internal quotation marks omitted) (emphasis added).

The facts cited by the district court fail to demonstrate that Fisher "used or attempted to use" M.T. to commit the Arkansas bank robbery—"the crime of conviction" here. Paine, 407 F.3d at 965 (internal quotation marks omitted). First, M.T.'s presence in the car as Fisher's "sidekick," "navigator," or "co-pilot" does not alone demonstrate Fisher's affirmative action encouraging her to assist in the Arkansas robbery considering that she merely sat in the car while he robbed the Arkansas bank. United States v. Parker, 241 F.3d 1114, 1120 (9th Cir. 2001) (holding "a defendant's participation in an armed bank robbery with a minor does not warrant a sentence enhancement under § 3B1.4 in the absence of evidence that the defendant acted affirmatively to involve the minor in the robbery, beyond merely acting as his partner").

Second, the fact that the getaway car was registered in the name "Jenna Miller" while M.T. was simultaneously using that alias does not show that Fisher affirmatively acted to involve M.T. in the Arkansas robbery because "Jenna Miller" was simply the name on a driver's license that Fisher had stolen and used to register the car. Evidence was not presented showing Fisher affirmatively acted to involve M.T. in the procurement of a getaway car for the Arkansas robbery. United States v. Pojilenko, 416 F.3d 243, 247 (3d Cir. 2005) (stating that there must be "some affirmative act beyond mere joint participation in a crime with a minor to qualify as 'use of a minor' under § 3B1.4").

Finally, the appropriate focus of the court's inquiry is whether Fisher "direct[ed], train[ed], or in some way affirmatively engage[d] [M.T.] in the crime of conviction." Paine, 407 F.3d at 965 (internal quotation marks omitted). Here, M.T. allegedly used Google Maps on her phone to help plot entry and getaway routes for some of the robberies in other states. M.T.'s unilateral use of her phone's Google Maps feature during the trip does not support a finding that Fisher affirmatively acted to involve her in the Arkansas robbery where no evidence was presented of Fisher's affirmative actions directing, demanding, or otherwise encouraging her to do so during the Arkansas robbery. United States v. Suitor, 253 F.3d 1206, 1210 (10th Cir. 2001) (stating that "the two-level § 3B1.4 increase is only applicable if a defendant directs, trains, or in some other way affirmatively engages the minor participant in the crime of conviction"). We agree with the dissent's statement that "the record does not disclose an 'affirmative' request from Fisher specifically relating to the Bentonville robbery," and we conclude that Paine is the law of our circuit such that the lack of evidence that Fisher affirmatively involved M.T. in the "crime of conviction" here controls. We leave for another day whether or not Fisher affirmatively involved M.T. in the other alleged crimes—should those crimes be brought before this court.

Thus, the district court incorrectly applied the two-level enhancement under USSG § 3B1.4. We do not reach the substantive reasonableness of the sentence because we find the district court's sentencing decision was not procedurally sound. Gall, 552 U.S. at 51 ("*Assuming that the district court's sentencing decision is procedurally sound*, the appellate court should *then* consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.") (emphasis added).

### III. Conclusion

Lacking evidence that Fisher affirmatively acted to involve M.T. in the Arkansas robbery, we find that the two-level enhancement under USSG § 3B1.4 should not have been applied.

Therefore, we reverse and remand for proceedings consistent with this opinion.

SMITH, Chief Judge, dissenting.

I respectfully dissent. The government bears the burden of proving the factual predicate by a preponderance of evidence for U.S.S.G. § 3B1.4 to apply and enhance Fisher's Guidelines range. *See United States v. Bolden*, 622 F.3d 988, 990–91 (8th Cir. 2010). For similar Guidelines enhancements, we have held that the government may meet this burden "using either direct or circumstantial evidence." *United States v. Loveless*, 139 F.3d 587, 593 (8th Cir. 1998) (drug type); *see also United States v. Staples*, 410 F.3d 484, 490 (8th Cir. 2005) (fraud loss). Because the record—based on Fisher's guilty plea—does not provide direct evidence that Fisher affirmatively involved M.T. in the Arkansas bank robbery, the majority holds that the district court clearly erred in finding that Fisher did so. The majority's holding misapplies the standard of review and our precedent, ignoring the circumstantial evidence placing M.T. at the scene of the crime at Fisher's behest.

At Fisher's sentencing hearing, the government presented testimony from FBI Special Agent Billy Cox, the agent assigned to investigate the Bentonville robbery. Agent Cox testified about interviews in which M.T. discussed her time with Fisher. Before meeting Fisher, M.T. lived in a group home for troubled youth. M.T. met Fisher at a donut shop; Fisher promised M.T. that if she ran away with him, he would take her to see her siblings. Together they purchased a gold Toyota Avalon and set out across the country. Initially, M.T. refused Fisher's sexual advances. Then one night Fisher got her "so messed up" on methamphetamine that she gave in, and from that time the two remained sexually involved. When they ran out of money, they started robbing banks:

> She said that the first one was the Casper, Wyoming bank robbery, that they planned it together, in her words. They planned it together; that Mr. Fisher wrote out a demand note and that he didn't let her see what it said. And that basically she helped plan a getaway route via Google Maps on her phone and that basically they did this because they had been, I guess, you know, asking people for money, for help, and that they weren't getting anything.

M.T. said that she would go to the banks with Fisher and remain in the Avalon during the robberies. Although M.T. did not specifically describe the Bentonville robbery, she remembered being in Arkansas to commit it. The Avalon was spotted on security cameras near the Bentonville bank. Fisher robbed this bank just as he did the others that M.T. described. On this evidence, the district court determined that M.T. "was used, by [Fisher's] own words, as his quote/unquote navigator obviously to assist in the entry route and the getaway route from the [Bentonville] robbery."

In *United States v. Gaskin*, the Second Circuit affirmed the application of § 3B1.4 when the district court reached the "'inescapable' conclusion" that the defendant "used" his 17-year-old son by bringing him to a drug deal. 364 F.3d 438, 464 (2d Cir. 2004). The boy's presence at the crime "supported an inference" that he

was there by the defendant's "conscious choice." *Id.* at 465. Because the defendant's "single purpose" for being at the location was to commit a crime, "the logical conclusion" was that the minor was there to help his father. *Id.* The Second Circuit found that these inferences supported the application of § 3B1.4. The same logic applies here. Fisher brought M.T. to the Bentonville bank robbery. She waited in the car for him during the crime. She helped him get away. Although the record does not disclose an "affirmative" request from Fisher specifically relating to the Bentonville robbery, an affirmative step to include M.T. in committing the crime can reasonably be inferred. The district court did not clearly err in its fact finding.

Our precedent also supports this result. For purposes of § 3B1.4, "a defendant may 'use' a minor by asking the minor to accompany him or her to a crime." *United States v. Voegtlin*, 437 F.3d 741, 747 (8th Cir. 2006) (citing *Paine*, 407 F.3d at 965). We have upheld a § 3B1.4 enhancement when "[b]ut for" the defendant, minors "would not have been involved" in a bank robbery. *United States v. Wingate*, 369 F.3d 1028, 1032 (8th Cir. 2004), *reinstated*, 415 F.3d 885 (8th Cir. 2005). We have also upheld the enhancement when a defendant planned a burglary with a minor because the minor, who acted as the getaway driver, was not an "'equal partner' in the offense." *United States v. Jones*, 612 F.3d 1040, 1048 (8th Cir. 2010). Fisher's case is not factually distinguishable. The majority stretches *Paine*'s holding out of shape. In *Paine*, we upheld the enhancement because of direct admissions by the defendant to include his son in the convicted crime, but *Paine*'s holding does not preclude a district court's reliance on circumstantial evidence to find an affirmative step.

For these reasons, I respectfully dissent.

_____