**UNITED STATES of America, Appellee,**

v.

**William E. BOYKIN, Appellant.**

No. 81–1965.

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1982.

Decided June 9, 1982.

James R. Wyrsch, Kansas City, Mo., for appellant.

Robert G. Ulrich, U. S. Atty., Carol Ann Petren, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

William E. Boykin was convicted of five counts of mail fraud under 18 U.S.C. § 1341. He was sentenced to confinement, study, and observation under the provisions of 18 U.S.C. § 4205(d). He here alleges that five errors in the trial merit reversal on appeal. We affirm Boykin's conviction.

## I.

The evidence at trial established the following. Boykin became friendly with one Isaac Kyle sometime in 1976. Kyle worked as an insurance agent with Allstate Insurance for approximately two years during 1977–1979.

In 1977, Kyle sold a lot with a house on it, located at 5820 Virginia, Kansas City, Missouri, to appellant Boykin. According to Kyle's testimony, Boykin planned to sell the property to Boykin's girlfriend, Antoinette Nizetich, allow her to live there for a while, and then set the property on fire. Boykin did subsequently sell the property to Nizetich and Nizetich insured it for $30,000.

According to Kyle's testimony, on or about October 15, 1978, Boykin called Kyle and said it was time to set fire to the house. Nizetich, a TWA flight attendant, had informed Boykin that she would be out of her house that day.

Kyle detailed at trial how the fire was set by Boykin and him by pouring gasoline in the house and igniting it with a match. He testified that immediately after the house was set afire, he went with Boykin to a bank where Boykin withdrew $100 from an automatic teller and gave it to Kyle for his help in setting the fire. Since Boykin had offered $600 to Kyle in exchange for Kyle's help in setting the fire, another $500 was paid to Kyle by Boykin in December 1978, with a personal check.

Some days after the fire was set, Boykin loaned Kyle $5,000. A few days later he loaned him another $4700. When Boykin demanded repayment, Kyle gave him a check which failed to clear because of insufficient funds. Boykin consequently filed a complaint with the prosecutor against Kyle. Kyle sent his brother to Boykin's house to retrieve the check. The brother and two of his companions broke into Boykin's home on two occasions. The first time, they burglarized Boykin's home. The second time, they physically abused Boykin, threatened to kill him and his family, and tied up Boykin's children.

The sale of the property at issue here from Boykin to Nizetich was never reduced to writing in the form of a written agreement. Kyle had previously purchased this property for $4500 in June 1977 and had sold it to Boykin in October 1977 for $6500. Boykin then sold the property to Nizetich, as evidenced by a deed of trust dated January 10, 1978, from Nizetich to Boykin. Nizetich testified at trial that she never requested a writing of any form because she totally trusted Boykin. Nizetich made a downpayment of $2000 on the home when she purchased it in January 1978, and she agreed to pay Boykin $210 per month. In fact, she did not make regular payments to Boykin but, according to her testimony, would purchase items for Boykin while traveling and deduct the cost of them from what she owed him. Nizetich did not divulge Boykin's interest in the property on her application for insurance on the home.

The day after the fire, Nizetich reported the loss to her insurance company. She filed the claim in her own name only and again did not divulge Boykin's interest. Out of the insurance proceeds which Nizetich collected for the fire damage, she paid $13,250 to Boykin.

On March 9, 1981, both Boykin and Isaac Kyle were separately indicted on charges of mail fraud stemming from fraudulent insurance claims. Isaac Kyle pled guilty to one of the five counts in his indictment and agreed to cooperate with the authorities by providing information regarding various fraudulent insurance claims, including the one here at issue.

Much of Kyle's testimony was independently corroborated by other evidence and witnesses including police investigators, fire officers, and a bank officer. Boykin testified on his own behalf and denied participating in any way in the arson.

II.

Boykin first alleges that the court erred in permitting cross-examination of him regarding his relationships with two women, Ms. Nizetich and a Carletta Elsworth. The challenged line of questioning indicated that Boykin was dating both women at the same time.

Boykin claims that the evidence was irrelevant and immaterial. He further claims that the evidence should have been excluded by Fed.R.Evid. 403,[1] 404(b),[2] and 608(b).[3] We disagree.

---

1. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

2. Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

3. See note 3 on page 1244.

The evidence was relevant to the Government's case in that the Government tried to show that Boykin exploited Nizetich's trust in him throughout this scheme to defraud the insurance company. The Government wanted, therefore, to show the "blind trust" that Nizetich had in Boykin. The subject of the relationship between Boykin and Carletta Elsworth was not introduced until the defense played a taped conversation between Nizetich and Boykin in which Nizetich said that she still believed in Boykin, even "when all that stuff came down with Carletta living with you and everything ...." The Government then used that statement to illustrate its argument.

■ Rule 404(b) limits the instances in which evidence of other crimes, wrongs, and acts may be admitted. The rule, however, is one of inclusion; it admits evidence of other crimes or acts relevant to an issue in the trial, unless it tends to prove *only* criminal disposition. *United States v. Green*, 648 F.2d 587, 591 (9th Cir. 1981). In the instant case, the evidence of Boykin's relationships with two women is only questionably covered at all by Rule 404(b) as it was not really offered as character evidence. At any rate, the evidence was "relevant to an issue in the case other than [the] defendant's criminal propensity" and was therefore admissible under 404(b). 648 F.2d at 592.

■ Rule 404(b)'s application is, of course, limited by Rule 403, which requires exclusion of evidence, even when relevant, if its probative value is substantially outweighed by the danger of prejudice. In this decision we give great deference to the district judge who heard the evidence. *E.g., United States v. Drury*, 582 F.2d 1181, 1185 (8th Cir. 1978), *and cases cited therein.*

The district judge[4] did not abuse his discretion in admitting this evidence.

### III.

■ Boykin next raises two evidentiary objections. One is that, over objection, Kyle was permitted to testify as to statements Judge Elmo Hunter of the United States District Court for the Western District of Missouri had made in considering Kyle's presentence report: "The judge said he looked at my presentence investigation and he said it was favorable and that I deserved a second chance, and I don't have any felony convictions." We view this statement as hearsay, not falling within any exception to the hearsay rule. However, when admission of the statement is viewed in the context of the entire trial and the overwhelming evidence of appellant's guilt, we find the error harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Fed.R.Crim.P. 52(a).

■ Kyle was also permitted, over objection, to testify regarding matters that he and his attorney discussed. He testified that it was decided that it would be best to reveal everything "regarding this case with Bill Boykin and a number of other cases that had actually happened in the Kansas City area." We do not view these statements, made by Kyle of his own intentions, to be hearsay. The full import of the statement objected to relates to Kyle's own feelings and views about fully disclosing his involvement in this and other arson schemes which were perpetrated in the Kansas City area.

Boykin also contends that remarks made by the Assistant U. S. Attorney (hereinafter

---

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**3.** Rule 608(b) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness ....

**4.** The Honorable John W. Oliver, Senior United States District Judge, Western District of Missouri.

referred to as the prosecutor) in her closing argument require reversal. He argues that it was improper for the prosecutor to attack his credibility and the character of his lawyer and certain witnesses. As defense counsel failed to object to the great majority of these statements at trial, Boykin alleges that they constituted plain error and that they denied him due process of law.

We find, however, that the prosecutor's remarks were not so prejudicial as to have "affected substantial rights resulting in a miscarriage of justice." Since they were not objected to, this is the standard with which the comments are reviewed. *United States v. Splain*, 545 F.2d 1131, 1136 (8th Cir. 1976), *and cases cited therein*. Furthermore, we find that the challenged comments were provoked by comments made by defense counsel about the prosecutor and the Government's witnesses. Thus, the prosecutor's remarks constituted fair reply. *United States v. Schwartz*, 655 F.2d 140, 142 (8th Cir. 1981). As to any possible minor misstatement of facts, the court gave a curative instruction which would have removed any prejudicial effect. *Id.*

## IV.

Boykin contends that the Government improperly vouched and had others improperly vouch for the credibility of its witness, Isaac Kyle. We find that, when viewed in the context of the entire trial, the challenged testimony does not warrant reversal. Kyle's testimony was very important to the Government's case. Kyle's credibility was a contested issue throughout the trial, since it was known by the jury that Kyle had also been indicted for fraud and had only then agreed to cooperate with the Government. The prosecution's attempt to admit some evidence of Kyle's credibility was justified. *United States v. Singer*, 660 F.2d 1295, 1305 (8th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982). Furthermore, the remarks at issue "did not carry an inference of outside knowledge or ask the jurors to rely on the prosecutor's own credibility." *United States v. Franklin*, 568 F.2d 1156, 1158–59

(8th Cir.), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807 (1978), *citing United States v. Dawkins*, 562 F.2d 567, 569 (8th Cir. 1977).

## V.

Boykin is a black man and Nizetich is a white woman. The Government exercised its peremptory jury challenges to exclude the only two black veniremen from the jury panel. Boykin now argues that he was greatly prejudiced thereby. In its August 11, 1981, order addressing Boykin's motion for judgment of acquittal, for new trial and for arrest of judgment, the district court wrote that

> though defendant's challenge to the striking by the government of both Black veniremen raises a serious question, defendant completely fails to establish either a systematic exclusion of Blacks or an exclusion for an impermissible reason. See *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) and *United States v. Greene*, 626 F.2d 75, 76 (8th Cir. 1980), the most recent Eighth Circuit case.

There is nothing in Boykin's appellate brief or in the record before us which would cause us to hold otherwise. There are no facts from which to deduce that the jury selection was improper, and thus we find no error. "Although prosecutors may not systematically exclude identifiable segments of the community from jury panels and the juries ultimately drawn from those panels, there is no constitutional requirement a jury be composed of members of the defendant's race." *Braxton v. Estelle*, 641 F.2d 392, 395 (5th Cir. 1981), *citing Apodaca v. Oregon*, 406 U.S. 404, 413, 92 S.Ct. 1628, 1634, 32 L.Ed.2d 184 (1972).

## VI.

Boykin's final contention is that the court should have granted his motion to dismiss the indictment against him. He argues that the indictment was founded on "a form of third-hand hearsay," and that highly exculpatory evidence was not presented to the grand jury. He urges that this, in conjunc-

tion with the fact that the jury was presented with a presigned indictment, denied him a fair hearing before the grand jury and thus denied him his right to due process.

Apparently Walter Kyle, Isaac Kyle's brother, initially informed the police of the scheme carried out by Boykin and Isaac Kyle. Nevertheless, the Government chose not to present Walter Kyle to the grand jury. Instead, it presented law enforcement officers who related what Walter Kyle had told them.

 The court did not err in denying the motion to dismiss the indictment against Boykin. It is well settled that there is a strong presumption of regularity accorded to grand jury findings. *United States v. West*, 549 F.2d 545, 554 (8th Cir. 1977). A heavy burden is placed on one who seeks to overturn the presumption that an indictment returned by a legally constituted body is founded on competent evidence. *Id.* Boykin has not met that burden here.

 An indictment may be valid even if it is based entirely on hearsay. *United States v. Neff*, 525 F.2d 361, 363 (8th Cir. 1975). As noted in *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956), "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." A defendant may not challenge an indictment on the ground that information which he considered favorable to his defense was not presented to the grand jury. *E.g., United States v. Cederquist*, 641 F.2d 1347, 1353 n.3 (9th Cir. 1981). *See United States v. Gunter*, 631 F.2d 583, 586 (8th Cir.1980). And, the presigning of an indictment does not warrant reversal. Though this court has expressed its disapproval of presigned indictments, and continues to so disapprove, the indictment in this case was returned prior to the court's admonition concerning the matter, and furthermore, such conduct alone would not war-

rant reversal of the conviction. *United States v. Singer*, 660 F.2d 1295, 1302 (8th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982); *United States v. Frantze*, 655 F.2d 128, 130–31 (8th Cir. 1981), *reh'g and reh'g en banc denied*.

The judgment is affirmed.