UNITED STATES of America, Appellee,

v.

Rodger WAGONER, Appellant.

No. 82–1953.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1982.

Decided Aug. 8, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 8, 1983.

Woodward, Rohrer & Mazzei, P.C., Steelville, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ROSS and FAGG, Circuit Judges, and WATERS,* District Judge.

FAGG, Circuit Judge.

Rodger Wagoner was convicted by a jury of conspiracy maliciously to damage and destroy by means of an explosive a vehicle owned and used by the Missouri State Highway Patrol, in violation of 18 U.S.C. § 844(i). On appeal Wagoner claims that the trial court committed error in (1) not taking action on Wagoner's pretrial motion in limine to exclude evidence of other wrongful acts; (2) allowing the government to introduce evidence of other wrongful acts committed by Wagoner and to refer to this evidence in its opening statement; (3) admitting certain telephone billing records; and (4) providing a copy of the indictment to the jury without contemporaneous additional instructions. We affirm.

On July 8, 1980, an unexploded bomb was found attached to a patrol car driven by Corporal Paul Mertens of the Missouri State Highway Patrol. In the first count of the indictment returned in connection with the incident Wagoner and James Murphy were charged with conspiring to bomb the vehicle. In the second count Wagoner alone was charged with transferring the bomb without having filed a written application with the Secretary of the Treasury. Wagoner and Murphy were charged with attempting to bomb the patrol car in the

---

* The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

third count. Wagoner was convicted on the conspiracy count and acquitted on the two other counts. Murphy entered a plea of guilty to the conspiracy count and testified for the government at Wagoner's trial after the attempt count was dismissed. From Murphy's testimony the jury could have found the following facts.

Murphy started delivering stolen automobiles to Wagoner sometime in 1975 or 1976. During the course of their dealings Murphy delivered some twenty to forty cars to Wagoner, for which Murphy was paid $500 each. Wagoner would then deliver the stolen cars to individuals who were involved in "tagging." "Tagging" is the process of transferring the plates containing the vehicle identification number (V.I.N.) from a demolished vehicle to a stolen vehicle in order to conceal the identification of the stolen vehicle. Wagoner also changed these V.I.N. plates himself. Wagoner worked on an irregular basis for James Reagan, who was also in the business of tagging cars.

Wagoner's association with Murphy was interrupted by Murphy's prosecution and imprisonment for stealing and receiving stolen property. Murphy was released from prison on May 26, 1980. He soon reestablished communications with Wagoner and began selling stolen automobile parts and tires to him. Murphy made the initial contact, with subsequent telephone calls and visits occurring during May, June and July of 1980. At some time during these conversations Reagan's name was mentioned by Wagoner.

In the middle or latter part of June 1980, Wagoner offered to pay Murphy $1000 for placing a bomb on a highway patrol car used by Trooper Mertens. Wagoner told Murphy that the reason for the bombing involved auto thefts and that this trooper was "putting a lot of heat on everybody down there." Murphy agreed to place the bomb on the car.

About a week later Murphy met Wagoner in Rolla, Missouri, and the two drove out to view the trooper's house. A few days later Wagoner called Murphy and asked him to come to Rolla that evening. At this meeting, on July 7, 1980, Wagoner delivered the bomb and explained how it worked and how to place it on the car. Wagoner said that a similar bomb had been made and tested. Murphy then went to the trooper's house and placed the bomb on the patrol car.

Wagoner claims the trial court committed error in allowing James Murphy and his wife, Joyce Murphy, to testify about other wrongful acts committed by Wagoner. James Murphy's testimony concerning prior misconduct has been described. James Murphy also testified that Wagoner was present when he delivered a vehicle to a third party several months after the attempted bombing, but when Murphy testified that the vehicle was not stolen the trial court struck the testimony and admonished the jury to disregard it. Joyce Murphy identified a bill of sale for a 1974 G.M.C. pickup issued by Wagoner approximately three months after the attempted bombing. She testified that she used the bill of sale to obtain a registration certificate for the truck and that the state highway patrol later took the truck from her, but she gave no reason for the taking.

■ Wagoner brought a motion in limine to exclude the evidence of other wrongful acts. The trial court did not rule upon this motion before trial, and Wagoner did not renew the motion during trial. Wagoner now contends that the trial court committed error in failing favorably to rule upon his motion in advance of trial. This contention lacks merit. It was incumbent upon Wagoner to obtain a ruling upon his motion and having failed to do so leaves nothing for review. *See United States v. Robertson*, 706 F.2d 253, 255 n. 2 (8th Cir.1983).

■ The rules pertaining to admissibility of evidence of other crimes, wrongs or acts are found in the Federal Rules of Evidence, Rules 404(b) and 403, and numerous decisions in this circuit. Under these rules and decisions, evidence of prior wrongful acts is

admissible when (1) the evidence is relevant to an issue in question other than that of the character of the defendant, (2) there is clear and convincing evidence that the defendant committed the other acts, and (3) the potential unfair prejudice of the evidence does not substantially outweigh its probative value. *United States v. Evans,* 697 F.2d 240, 247–48 (8th Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 1779, 76 L.Ed.2d 352 (1983). Rule 404(b) is one of inclusion because it admits evidence of other crimes, wrongs, or acts relevant to an issue in the trial, unless it tends only to prove criminal disposition. *United States v. Boykin,* 679 F.2d 1240, 1244 (8th Cir.1982). The trial court is vested with broad discretion in determining whether to admit wrongful act evidence. *United States v. Evans,* 679 F.2d at 248. This discretion will be disturbed and a case reversed only when the evidence in question clearly has no bearing upon any of the issues involved. *United States v. Marshall,* 683 F.2d 1212, 1215 (8th Cir.1982).

■ Wagoner contends that Murphy's testimony of their prior dealings in stolen cars was not relevant to any issues in this case. We disagree. Wagoner's participation in the conspiracy was an essential element of the crime and this element was placed in issue by his plea of not guilty. This plea placed the burden on the government to prove in its case in chief the pivotal fact of Wagoner's membership in the conspiracy. Evidence that Wagoner was involved in a continuing venture of automobile theft activity was highly relevant to show the likelihood that he conspired to bomb the trooper's car, first, to protect his business venture and, second, to avoid detection. This evidence was admitted to show motive—that Wagoner had a solid reason to conspire—and this is a proper ground for admitting wrongful act evidence. *See* Fed.R.Evid. 404(b); *United States v. Turpin,* 707 F.2d 332, 335–36 (8th Cir.1983); *United States v. Goehring,* 585 F.2d 371, 372 (8th Cir.1978); *United States*

*v. Peltier,* 585 F.2d 314, 321 (8th Cir.1978), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979); 2 D. Louisell & C. Mueller, *Federal Evidence* § 140, at 122–23 (1978); C. Torcia, *Wharton's Criminal Evidence,* § 247 (13th ed. 1972).

■ Contrary to our viewpoint, Wagoner argues that until he offered evidence at trial which placed his motive in issue the government was precluded from offering evidence of his prior dealings in stolen automobiles. He relies on our statement in *United States v. Clemons,* 503 F.2d 486 (8th Cir.1974), holding that before evidence of other crimes is introduced it must be shown that "an issue on which other crime evidence may be received is raised." *Id.* at 489. Wagoner correctly notes that his motive was not itself an issue in this case, nor was it an element of the crime. However, Wagoner's reliance on *Clemons* is misplaced. Whether an issue has been raised for purposes of receiving evidence of other wrongful conduct depends on the elements of the offense and the nature of the defense. *Id.* By pleading not guilty Wagoner necessarily disputed the issue of his membership in the conspiracy. Consequently, it was unnecessary for the government to await Wagoner's presentation of evidence before proceeding with its proof in support of the elements of the crime. When evidence of other wrongful conduct "is offered to prove that the defendant committed the act charged in the indictment, for example, by proving identity or common scheme, the evidence may be offered during the prosecution's case in chief, unless the defendant's commission of the act is not a disputed issue." *United States v. Figueroa,* 618 F.2d 934, 939 (2d Cir.1980).

■ Wagoner also argues that the evidence of his prior wrongful acts did not meet our requirement that there must be clear and convincing evidence that he committed the prior acts. We disagree. Murphy's testimony was sufficiently clear and specific to satisfy the clear and convincing

standard, and we do not require corroboration of this kind of testimony before it goes to the jury. *United States v. Evans, supra,* 697 F.2d at 248–49.

■ Finally, the record does not support Wagoner's contention that the prejudicial nature of the evidence substantially outweighed its probative value. *See* Fed.R. Evid. 403; *United States v. Goehring, supra,* 585 F.2d at 373. The automobile theft evidence provided a plausible motive for Wagoner's actions and as such it was important to the government's case. Furthermore, the evidence was not inflammatory as to divert the jury's attention from the issues of the case; and the trial court took steps to minimize the danger of unfair prejudice by giving the jury a cautionary instruction limiting its consideration of the evidence only on the question of motivation.

■ It has been suggested that it is preferable for trial judges to defer the introduction of evidence of other crimes, wrongs, or acts until after the defense because the judge will then be in a better position to appraise the government's need for the evidence. *See United States v. Crawford,* 438 F.2d 441, 448 (8th Cir.1971); 2 D. Louisell & C. Mueller, *supra,* § 140 at 116–17. However, we cannot fault the trial judge's handling of the matter in this case. In the first place Wagoner did not request a delayed ruling on his objection at trial or otherwise challenge the order of trial. Secondly, the record furnished for our review shows the government's need for the additional evidence, since the key conspiracy witness, Murphy, was a man of severely blemished character and the government's burden was not lessened by a defense position at trial which conceded or acknowledged Wagoner's membership in the conspiracy.

■ The evidence of subsequent wrongful activity was not sufficiently developed by the government to prejudice Wagoner. Joyce Murphy testified that a vehicle received from Wagoner was later

taken from her by the state highway patrol. The government apparently offered this testimony for the inference that the vehicle was stolen, but the record does not include any evidence showing that the vehicle was stolen or giving a reason for the taking. There was no reversible error in the admission of this inconclusive testimony. Furthermore, Mrs. Murphy's testimony about the taking was given without objection. A failure to assert an objection to evidence in the trial court is a waiver of any grounds of complaint to its admissibility. There is nothing for us to review. Nor can we say that the objection raised by counsel on appeal comes within the plain error rule. *See United States v. Price,* 464 F.2d 1217, 1218–19 (8th Cir.1972), *cert. denied,* 409 U.S. 1040, 93 S.Ct. 522, 34 L.Ed.2d 489 (1972). Similarly, James Murphy testified only that Wagoner had accompanied him several months after the attempted bombing when he delivered a vehicle, which he said was not stolen, to a third party. In any event, this testimony was harmless in view of the prompt striking of the testimony and curative instruction by the trial court. *See United States v. Williams,* 604 F.2d 1102, 1126 (8th Cir.1979).

■ Wagoner also contends that the government referred improperly to evidence of other wrongful acts in its opening statement. Wagoner moved for a mistrial during the prosecutor's opening statement. The motion was based upon an objection made to the trial judge by Wagoner's counsel during an off-the-record discussion. The grounds of the objection have not been furnished to us and there is nothing to review. Moreover, at the time the mistrial motion was made the prosecutor had already informed the jury of Wagoner's prior wrongful acts, and these comments were not prejudicial to him because the challenged evidence was admissible. *See United States v. Haldeman,* 559 F.2d 31, 90–91 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

Wagoner also argues that the trial court erred in admitting certain telephone billing

records. These records pertained to telephone charges billed to the Murphy household, Rodger Wagoner and James Reagan. The records showed calls from the telephone number listed under Wagoner's name to the Murphy number on July 2, 7 and 10, 1980. The Reagan bill showed a call on June 9, 1980, to Wagoner's number.

■ At trial Wagoner objected to the admission of the Murphy and Wagoner records on the general ground that a "proper foundation" had not been established. On appeal he argues that the foundation was inadequate because the government failed to establish that the records were trustworthy. Any error in this instance was not properly preserved. Foundation objections require specificity, and in the absence of a specific objection on foundation grounds reversal is not required. *United States v. Willis,* 482 F.2d 1034, 1040 (8th Cir.1973), *cert. denied,* 414 U.S. 1112, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973). Wagoner may not now complain of the trial court's ruling by urging a ground not mentioned when the objection was made where, as here, the asserted ground for exclusion was not obvious. Wagoner also objected to admission of Reagan's and his own telephone records on the ground that the records were not "the best evidence." The objection lacks merit. The records were shown to be accurate reproductions of the originals and therefore are duplicate originals under Fed. R.Evid. 1001(4) and admissible to the same extent as the originals under Fed.R.Evid. 1003.

■ Nor do we find prejudice sufficient to constitute plain error despite the inadequacy of the objections. The Murphy records were offered to show the Murphy telephone number, a number called from the Wagoner phone. The records were cumulative in view of the fact that both Mrs. Murphy and a telephone company representative recited the Murphy number without objection. Furthermore, evidence of telephone communications between Wagoner and James Murphy shown on the challenged records was also cumulative because there was direct evidence of these calls in James Murphy's testimony. Any error in admitting the records was harmless. *United States v. King,* 590 F.2d 253, 255 (8th Cir.1978), *cert. denied,* 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979).

■ Similarly, the entry in Reagan's telephone records showing a call to Wagoner's number was cumulative because there was other evidence before the jury indicating the association of the two men and Reagan's involvement in the conspiracy, including the discovery in Reagan's workshop of parts and materials like those found in the bomb. Moreover, any error in admitting the circumstantial evidence of Wagoner's guilt provided by the Reagan telephone records was harmless when viewed in the context of the whole trial, which included substantial direct evidence of Wagoner's involvement in the conspiracy. Fed.R. Crim.P. 52(a); *see United States v. Wentz,* 686 F.2d 653, 658 (8th Cir.1982).

During the course of its deliberations the jury requested a copy of the indictment, which the trial court furnished with the caption and "true bill" language excised. In the original charge the court had clearly instructed the jury that the indictment was not evidence of any kind against the accused, but the jury was not given any further instructions at the time the copy of the indictment was furnished. Later in the same morning, however, the jury was brought into the courtroom and instructed that the indictment was not evidence. At that time the jury had reached a verdict on one of the counts, but the jury did not reveal on which count or its verdict. Following further deliberations a guilty verdict on the conspiracy count was returned.

■ Submission of the indictment to the jury is a matter within the sound discretion of the trial court provided the jury is properly admonished that the indictment does not constitute evidence of any kind.

*United States v. Wedelstedt,* 589 F.2d 339, 350 (8th Cir.1978), *cert. denied,* 442 U.S. 916, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Any error in not giving additional instructions at the time the indictment was submitted was harmless in the light of the original charge and the additional instruction given before the jury returned its verdict.

Affirmed.