# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2201

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Robert Voegtlin, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 11, 2005
Filed:  February 9, 2006

_____

Before RILEY, HANSEN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Following a jury trial, Robert Voegtlin was convicted of one count of conspiring to possess a listed chemical, pseudoephedrine, knowing or having reason to believe it would be used to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(2) and 846. The district court[1] sentenced him to 121 months' imprisonment. Voegtlin appeals, and we affirm.

---

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

I.

Voegtlin was charged with conspiring with Michael Skiles, Kimberly Rainey, and Robert Sanders from March 1 through May 1, 2003. Evidence at trial, taken in the light most favorable to the jury's verdict, showed that Voegtlin directed Rainey, his then-girlfriend, and Sanders, his nephew, to buy pseudoephedrine pills from local drug stores and to give the pills to Skiles, who used them to produce methamphetamine. Voegtlin then obtained the methamphetamine and sold it. At sentencing, for purposes of the advisory sentencing guidelines, the district court found that Voegtlin was responsible for 34.56 grams of pseudoephedrine, that he used a minor in the commission of the offense, and that he was a manager or supervisor of the conspiracy. The court sentenced Voegtlin within the advisory guideline range to a term of 121 months' imprisonment.

II.

Voegtlin first argues that the trial court abused its discretion by admitting testimony of co-defendant Michael Skiles about Voegtlin's prior drug dealings. Voegtlin contends that the events about which Skiles testified were outside of the scope of the charged conspiracy, and thus inadmissible. Skiles testified that he had known Voegtlin as a teenager, and then reconnected with him in 2002, when Skiles was a methamphetamine cook. According to Skiles, the two agreed in 2002 that Voegtlin would supply ingredients and that Skiles would cook the methamphetamine.

Voegtlin claims that Skiles's testimony was not properly admitted because its sole purpose was to show that Voegtlin possessed the propensity to commit crimes related to methamphetamine. The government agreed that the acts about which Skiles testified were not within the scope of the charged conspiracy, but contended that the

testimony was admissible under Federal Rule of Evidence 404(b) to prove Voegtlin's knowledge, motive, and intent. The district court admitted the testimony, and gave a lengthy limiting instruction to the jury, explaining:

> You may not use this other acts evidence to decide whether the defendant carried out the acts involved in the crime charged in the indictment. In order to consider other acts evidence at all, you must first unanimously find beyond a reasonable doubt, based on the rest of the evidence introduced, that the defendant carried out the acts involved in the crime charged in the indictment. If you make that finding, then you may consider the other acts evidence to decide whether the defendant had a motive or the requisite knowledge and/or intent to commit the crime charged. . . . You may not convict a person simply because you believe he may have committed similar acts in the past. The defendant is on trial for the crime charged, and you may consider the evidence of prior acts only on the issue of motive, knowledge and or intent.

(T. Tr. at 159-160).

We review the admissibility of evidence under Rule 404(b) for abuse of discretion. *United States v. Green*, 275 F.3d 694, 701 (8th Cir. 2001). The district court has broad discretion in admitting such evidence and will be reversed only if "such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Thomas*, 398 F.3d 1058, 1062 (8th Cir. 2005) (internal quotation omitted).

Rule 404(b) provides that evidence of prior crimes or acts, while inadmissible to prove that a person acted in conformity with the prior act, may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This evidence is admissible if it is: "1) relevant to a material issue; 2) similar in kind and close in time to the crime charged; 3) proven by a preponderance of the evidence; and 4) if the potential

prejudice does not substantially outweigh its probative value." *Thomas*, 398 F.3d at 1062.

A necessary element of the charged conspiracy was Voegtlin's knowledge of the purpose of the conspiracy. Voegtlin's prior involvement in the use of listed chemicals to manufacture methamphetamine was relevant to prove this element of knowledge, and such evidence may be admissible even if the defendant has not raised a defense based on lack of knowledge. *United States v. Davidson*, 195 F.3d 402, 408 (8th Cir. 1999). Skiles's testimony that Voegtlin previously had agreed to provide ingredients for Skiles to cook into methamphetamine, and that, in 2002, Voegtlin was selling methamphetamine that Skiles had cooked, is relevant to prove that Voegtlin knowingly joined the charged conspiracy. The prior acts were similar in kind and close in time to the charged conspiracy: the prior agreement was virtually identical to the charged conduct, and the acts occurred the year before the beginning of the charged conspiracy. Voegtlin did not offer any evidence to rebut Skiles's testimony, and the trial court issued a limiting instruction to guard against potential unfair prejudice. Thus, the district court did not abuse its discretion in admitting Skiles's testimony.

III.

Voegtlin next argues that the evidence was insufficient to establish that he conspired to possess pseudoephedrine with reason to believe that it would be used to manufacture methamphetamine during the life of the conspiracy. The government based its case primarily upon the testimony of three witnesses: Kimberly Rainey, Robert Sanders, and John Downs. Each testified that Voegtlin had directed him or her to purchase pseudoephedrine pills and deliver the pills to Voegtlin, so that he could use them to manufacture methamphetamine. Rainey testified that during the period of the charged conspiracy, Voegtlin gave her money, she bought pills for him,

Voegtlin took the pills to someone for cooking, and Voegtlin brought back methamphetamine.

Sanders testified that he bought pills for Voegtlin in exchange for money or drugs. He said that on April 3, 2004, Voegtlin called Sanders and asked him to buy pseudoephedrine pills. Sanders contacted Downs for a ride, picked up money from Voegtlin, bought the pills, and was arrested before returning to Voegtlin's residence. Downs confirmed that he gave Sanders a ride to obtain pills for Voegtlin, and that they had purchased pills for Voegtlin several times previously.

We review challenges to the sufficiency of the evidence by examining the record in the "light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Crossland*, 301 F.3d 907, 913 (8th Cir. 2002). We will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

To convict Voegtlin of conspiring to possess pseudoephedrine, knowing that it will be used to manufacture methamphetamine, the government must prove that "1) a conspiracy existed; 2) [Voegtlin] knew of the conspiracy; and 3) he knowingly became a part of the conspiracy." *Crossland*, 301 F.3d at 913. The government was not required to prove that Voegtlin actually possessed pseudoephedrine, but rather that he conspired to possess it having reason to believe that it would be used to manufacture methamphetamine. Evidence that a person buys and distributes the precursor chemicals used to make methamphetamine may be sufficient to support a conviction under §§ 846 and 841(c)(2). *Crossland*, 301 F.3d at 913-14.

On this record, a reasonable jury easily could find that Voegtlin was a supplier and broker of chemicals, including pseudoephedrine, used to make methamphetamine. All three witnesses testified that they bought pseudoephedrine pills for Voegtlin, who

then had them cooked into methamphetamine. The jury could reasonably have concluded that Voegtlin directed the purchase of the pseudoephedrine pills knowing that they would be cooked into methamphetamine.

## IV.

Voegtlin argues that the district court erred in enhancing his sentence for using a minor in committing the offense, by increasing his offense level under the guidelines for an aggravating role in the offense, and in computing the amount of pseudoephedrine attributable to him. We review the district court's interpretation and application of the sentencing guidelines *de novo*, but review the findings of fact for clear error. *United States v. Mashek,* 406 F.3d 1012, 1017 (8th Cir. 2005).

## A.

Voegtlin claims that the district court's finding that he used a minor in the conspiracy was clearly erroneous, because during the time of the charged conspiracy, a co-defendant, rather than Voegtlin, directed the activities of the minor. Voegtlin also contends that the enhancement should not have been assessed, because he did not know that the minor was under the age of eighteen.

The district court applied the two-level enhancement because it concluded that Voegtlin was directing John Downs, who was sixteen years old throughout the charged conspiracy. On several occasions, Downs drove Robert Sanders to stores to buy pseudoephedrine pills and to Voegtlin's residence to drop off the pills. (T. Tr. at 273, 275). Downs also occasionally purchased pills himself. (T. Tr. at 273-74). Downs and Sanders were arrested on April 3, 2003, while buying pills for Voegtlin. At the time of the arrest, Downs told police that he was buying pseudoephedrine for Voegtlin. Downs testified that he understood that the pills would be used by Voegtlin to trade for methamphetamine. (T. Tr. 274-76.) He also testified that Voegtlin had

warned him that if he was ever caught buying pills, then he should "blame it on Michael Skiles." (T. Tr. at 275).

Under the sentencing guidelines, the trial court should apply a two-level enhancement "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." USSG § 3B1.4. The commentary defines "used or attempted to use" to include "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." USSG § 3B1.4, comment. (n.1). For the adjustment to apply, the defendant must affirmatively involve or incorporate the minor into the commission of the offense. *United States v. Paine*, 407 F.3d 958, 965 (8th Cir. 2005). Among other things, a defendant may "use" a minor by asking the minor to accompany him or her to a crime. *Id.*

Voegtlin argues that during the time of the charged conspiracy, only Sanders directed Downs, so Voegtlin did not "use" a minor. There was ample evidence, however, to support the district court's application of the enhancement. A defendant convicted of conspiracy is accountable under the guidelines for all reasonably foreseeable acts of a co-conspirator taken in furtherance of the jointly undertaken criminal activity. USSG § 1B1.3. Even though Sanders interacted directly with Downs during the course of the conspiracy, the district court did not err by concluding that it was reasonably foreseeable to Voegtlin that Sanders would have done so. Voegtlin knew that Downs had driven Sanders on drug-related missions in the past, and that both Sanders and Downs had purchased pills for Voegtlin. (T. Tr. at 274-75). Voegtlin personally instructed Downs to implicate another person if he was arrested, (T. Tr. at 275), thus confirming Voegtlin's knowledge that Downs was involved in the joint criminal activity.

Voegtlin also contends that the enhancement should not apply unless the defendant has knowledge that the individual is a minor. He argues that the evidence

does not show that he was aware that Downs was under the age of eighteen, so the government failed to prove a necessary element of the enhancement. There is nothing in the guidelines or the commentary, however, to indicate such a knowledge requirement. *See* USSG § 3B1.4. Under the plain language of the guidelines, we conclude that it is not necessary for the government to prove that the defendant had actual knowledge of the age of the minor drawn into the criminal activity. *Accord United States v. Lewis*, 386 F.3d 475, 479 (2d Cir. 2004); *United States v. Thornton*, 306 F.3d 1355, 1358-59 (3d Cir. 2002); *United States v. Gonzalez,* 262 F.3d 867, 870 (9th Cir. 2001); *United States v. McClain*, 252 F.3d 1279, 1286 (11th Cir. 2001). The district court did not err in enhancing Voegtlin's sentence for the use of a minor.

## B.

Voegtlin also argues that the district court erred in applying an adjustment for his role in the offense because he did not manage anyone during the life of the conspiracy. At sentencing, the court found that Voegtlin had directed Rainey, Sanders, and Downs to obtain the pseudoephedrine for the manufacture of the methamphetamine and provided the funds to make the purchases. The court determined that Voegtlin "played a managerial and supervisory role in this conspiracy." (S. Tr. at 12).

Section 3B1.1(c) of the sentencing guidelines provides that the defendant's offense level increases by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." The government may establish the applicability of this adjustment by proving that the defendant controlled at least one other participant in the offense. *United States v. Yerkes*, 345 F.3d 558, 563 (8th Cir. 2003). Instructing others to obtain precursors used to produce methamphetamine is evidence of a managerial or supervisory role. *Id.*; *United States v. Mesner*, 377 F.3d 849, 851 (8th Cir. 2004). As the court noted at sentencing, Voegtlin instructed three people to obtain pseudoephedrine pills and bring them to him. He also provided the

money to buy the pills. Given that evidence, the district court did not err in enhancing Voegtlin's sentence for acting as a manager or supervisor.

## C.

Voegtlin argues finally that the district court erred in determining the amount of pseudoephedrine attributable to him. The court found that he was responsible for 34.56 grams of pseudoephedrine, the combined amount seized from Rainey (8.64 grams) and Sanders (25.92 grams) at the time of their arrests. (S. Tr. at 8-9).

Under the guidelines, in a jointly undertaken criminal activity, a defendant's sentence is determined based on all reasonably foreseeable acts of others taken in furtherance of the jointly undertaken criminal activity. USSG § 1B1.3. Voegtlin claims that he did not direct Rainey to purchase the pseudoephedrine pills for him on the day that she was arrested. Rainey testified, however, that during the time of the charged conspiracy, she routinely obtained pills for Voegtlin, and that he provided her with methamphetamine in exchange. In light of this ongoing arrangement, the district court did not clearly err in finding that Voegtlin reasonably could have foreseen Rainey's purchase of the pseudoephedrine. The quantity of psuedoephedrine seized from Sanders is also attributable to Voegtlin, because Sanders and Downs obtained the pills at his request and with his money. Therefore, the district court did not err in attributing 34.56 grams of pseudoephedrine to Voegtlin.

The judgment of the district court is affirmed.

_____