# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3876

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | *    Appeal from the United States |
| v. | *    District Court for the |
| | *    Eastern District of Missouri |
| Charles Edward Shurn, | * |
| | *         [UNPUBLISHED] |
| Defendant-Appellant. | * |

_____

Submitted: March 16, 2006
Filed: June 29, 2006

_____

Before ARNOLD and SMITH, Circuit Judges, and MAGNUSON,[1] District Judge.

_____

MAGNUSON, District Judge.

A jury convicted Charles Edward Shurn of possession with the intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). Shurn appeals the denial by the district court[2] of his pretrial motion to dismiss the indictment. He also appeals the

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

[2] The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

admission of evidence of his prior conviction for possession of heroin. We affirm the district court on both grounds.

**BACKGROUND**

St. Louis Police Detective Thomas Sawyer began investigating Shurn after he received an anonymous phone call about Shurn's suspected narcotics dealing. During the course of the investigation, Detective Sawyer learned that Shurn was on federal supervised release under the supervision of Probation Officer Clinton Vestal, who happened to be Detective Sawyer's friend. Detective Sawyer contacted Vestal to verify some addresses associated with Shurn, and police officers began surveillance of Shurn at these locations.

Over the next several months, Detective Sawyer and Vestal spoke four to eight times about Shurn's actions on supervised release. On February 26, 2004, Vestal told Detective Sawyer that he had received an anonymous phone call relating that Shurn was abusing his fiancee. On May 17, 2004, Detective Sawyer told Vestal that the police believed Shurn was selling heroin, and Vestal replied that he intended to send Shurn to a drug rehabilitation program. Three days later, Vestal learned that Shurn had abandoned the program, and he phoned Detective Sawyer to ask if the police knew where Shurn was.

As a condition of supervision, Shurn was required to undergo substance abuse testing, and he tested positive for opiates several times in April 2004. Based on the positive drug tests and Shurn's abandonment of the drug rehabilitation program, Vestal decided to petition for a revocation of Shurn's supervised release. The district court revoked supervision and issued an arrest warrant. On June 1, 2004, a Deputy United States Marshal told Detective Sawyer that a revocation warrant had issued for Shurn's arrest.

Detective Sawyer drove an unmarked car to several locations associated with Shurn, and he ultimately found Shurn in the front yard of one of the houses. Two other officers began surveillance while Detective Sawyer and other officers assembled to execute the warrant. The surveilling officers saw Shurn make three hand-to-hand transactions within a few minutes. Shurn then left the premises in a vehicle, and the officers gave chase, activating their lights and siren. One of the officers fired a gun, and Shurn sped away. The chase lasted three to five minutes, ending when Shurn's vehicle collided with two other cars. Shurn and his passenger fled on foot, but officers caught them after a short pursuit. During a pat-down search, an officer found a little more than a gram of heroin in a bag pinned inside Shurn's pants.

Before trial, Shurn moved to dismiss the case with prejudice, alleging that Vestal's communications with Detective Sawyer were improper. A magistrate judge recommended denial of the motion, and the district court agreed. Shurn also moved in limine to preclude evidence of his prior convictions in 1987 and 2000 for possession of heroin with the intent to distribute. The district court granted the motion as to the 1987 conviction but allowed evidence of the 2000 conviction on the basis of relevance. At trial, the government introduced evidence that Shurn pled guilty in 2000 to possessing heroin with the intent to distribute. Shurn was ultimately convicted and sentenced to 240 months imprisonment.

**DISCUSSION**

**A.     Communications Between Vestal and Detective Sawyer**

Shurn contends that Vestal's ex parte communications with Detective Sawyer caused him to become an advocate for the prosecution, thereby intertwining the judicial and executive branches. According to Shurn, this violated his constitutional right to be tried in an impartial tribunal. The standard of review for constitutional error is de novo. United States v. Washington, 318 F.3d 845, 854 (8th Cir. 2003).

Probation officers are judicial branch employees hired to provide a wide range of information about defendants and their offenses. See 18 U.S.C. § 3602(a); Fed. R. Crim. P. 32(c) (requiring probation officers to conduct presentence investigations and submit reports to the district courts). One of the duties of a probation officer is to keep informed about the conduct and condition of a person on supervised release. See 18 U.S.C. § 3603.

In United States v. McFarland, 16 F.3d 316 (8th Cir. 1997), the defendant accused the police of conducting an unlawful search under the guise of his parole officer's visit. Suspecting that the defendant was violating parole conditions, his parole officer authorized the police to perform two warrantless searches of his residence and a storage locker. Id. at 317-18. The parole officer was present for only one of the searches. Id. at 318. The defendant argued on appeal that the parole officer was helping the police avoid the warrant requirement instead of pursuing legitimate parole-related objectives. Id. We stated that a parole officer's search is unlawful if it is merely a ruse for police action. Id. (citing United States v. Martin, 25 F.3d 293, 296 (6th Cir. 1994); United States v. Coleman, 22 F.3d 126, 129 (7th Cir. 1994); Shea v. Smith, 966 F.2d 127, 132 (3d Cir. 1992); United States v. Harper, 928 F.2d 894, 897 (9th Cir. 1991); United States v. Cardona, 903 F.2d 60, 65 (1st Cir. 1990)). However, parole officers and the police can work together as long as the parole officer "is pursuing parole-related objectives and is not merely a 'stalking horse' for the police." Id. Although McFarland differs on its facts, it clearly indicates that a probation officer and a police officer may share information. See also United States v. Reyes, 283 F.3d 446, 463 (2d Cir. 2002) ("the objectives and duties of probation officers and law enforcement personnel are unavoidably parallel and are frequently intertwined."); United States v. Martin, 25 F.3d 293, 296 (6th Cir. 1994) ("police officers and probation officers can work together and share information to achieve their objectives.").

In our judicial system, police officers and probation officers must often work together and share information. Although Vestal and Detective Sawyer exchanged some information, they breached no constitutional boundaries. As a probation officer, Vestal was obligated to keep informed of Shurn's conduct and location. When Vestal learned that Shurn had violated the terms of his supervision and abandoned the drug rehabilitation program, Vestal contacted Detective Sawyer in an attempt to locate Shurn and address the violations. Contrary to Shurn's assertion, the contacts between Vestal and Detective Sawyer did not dominate the police investigation. Much of the information passed from Vestal to Detective Sawyer was routine notification to a law enforcement agency. Although the necessity of sharing the anonymous report of abuse is questionable, this particular information did not lead to any police action. Neither Detective Sawyer nor Vestal relied exclusively on information from each other in their individual investigations. Each also independently investigated Shurn.

"A fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136 (1955). The communications between Vestal and Detective Sawyer did not create a partial tribunal. There was no violation of due process or other unconstitutional commingling of governmental powers. We therefore affirm the denial of the motion to dismiss the indictment.

## B.     Admissibility of Shurn's Prior Conviction

Shurn also challenges the admission of evidence of his 2000 conviction for possession of heroin under Federal Rule of Evidence 404(b). The standard of review applicable to the admission of evidence under Rule 404(b) is abuse of discretion. United States v. Voegtlin, 437 F.3d 741, 745 (8th Cir. 2006). A district court has broad discretion to admit evidence of other crimes. United States v. Mays, 822 F.2d 793, 797 (8th Cir. 1987).

Rule 404(b) prohibits the admission of evidence to prove that a defendant acted in conformity with prior bad acts, but evidence of such acts "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). The rule "is one of inclusion because it admits evidence of other crimes, wrongs, or acts relevant to an issue in the trial, unless it tends only to prove criminal disposition." United States v. Wagoner, 713 F.2d 1371, 1375 (8th Cir. 1983) (citing United States v. Boykin, 679 F.2d 1240, 1244 (8th Cir. 1982)). A prior conviction is admissible when it is "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) supported by sufficient evidence; and (4) such that its probative value is not outweighed by any prejudicial impact." United States v. Ruiz-Estrada, 312 F.3d 398, 403 (8th Cir. 2002) (citing United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000)).

According to Shurn, evidence of his prior conviction should not have been admitted because intent and knowledge were not material issues. This challenge relates to the first factor listed above. We routinely uphold the admission of prior drug convictions in cases charging narcotics violations under the "intent" and "knowledge" language of Rule 404(b). See, e.g., United States v. Haynes, 881 F.2d 586, 590 (8th Cir. 1989); United States v. Maichle, 861 F.2d 178, 180-81 (8th Cir. 1988); United States v. Norton, 846 F.2d 521, 524 (8th Cir. 1988). Shurn relies on United States v. Jenkins, 7 F.3d 803 (8th Cir. 1993), in support of his argument that evidence of other crimes is not admissible when a defendant denies committing the offense, because such a defense does not place intent at issue. However, Jenkins was implicitly overruled by the Supreme Court in Old Chief v. United States, 519 U.S. 172 (1997), as we recognized in United States v. Hill, 249 F.3d 707, 710-13 (8th Cir. 2001). The current rule is that the government may introduce evidence of a prior conviction to show intent even though a defendant unequivocally claims not to have committed the present offense. Hill, 249 F.3d at 712-13; United States v. Walker, 428 F.3d 1165, 1170 (8th Cir. 2005). We recently upheld the admission of evidence of

three prior convictions based on the converse of the <u>Jenkins</u> rule: "When the defendant in a drug prosecution denies the charged wrongdoing, . . . evidence of past drug convictions is admissible to prove both knowledge and intent." <u>United States v. Love</u>, 419 F.3d 825, 828 (8th Cir. 2005) (citing <u>United States v. Foster</u>, 344 F.3d 799, 801 (8th Cir. 2003)).

In the present case, Shurn was charged with possession with the intent to distribute heroin. At trial, he denied possessing heroin. The district court instructed the jury that the government would have to prove that Shurn actually possessed heroin, that he knew he possessed heroin, and that he intended to distribute heroin. The prior conviction was relevant and material to show Shurn's knowledge of drugs and their illegal means of distribution, as well as his intent to control the heroin and distribute it. <u>See</u> <u>Foster</u>, 344 F.3d at 801-02.

Shurn also argues that the conviction was inadmissible because the probative value of the evidence depended entirely on the inference of propensity. However, the potential prejudice from evidence that a defendant previously possessed or sold drugs does not necessarily outweigh the probative value of the evidence. <u>See, e.g.</u>, <u>Love</u>, 419 F.3d at 828; <u>United States v. Betterton</u>, 417 F.3d 826, 832 (8th Cir. 2005). In Shurn's case, the prior conviction was highly probative of both intent and knowledge, which were crucial components of the government's burden of proof. Any resulting prejudice was not undue. We note further that Shurn testified in his own defense and was subject to impeachment based on the prior convictions. Indeed, Shurn's own attorney chose to question him about the prior crimes in his direct testimony. Finally, the district court gave a limiting instruction to the jury to consider the conviction only for the limited purpose for which it was offered. A jury is presumed to follow its instructions, <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000), and Shurn has not shown otherwise. The district court did not abuse its discretion in admitting evidence of Shurn's prior conviction in 2000.

**CONCLUSION**

Communications between Shurn's probation officer and the police did not violate Shurn's right to an impartial tribunal, and the district court did not err in admitting evidence of Shurn's prior conviction to show his knowledge and intent to distribute heroin. Accordingly, we affirm the judgment of the district court.

————————————————