# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4171

_____

United States of America,

        Appellee,

v.

Russell F. Eagle Bear, III,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of South Dakota.

_____

Submitted: June 12, 2007
Filed: November 5, 2007

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Russell Eagle Bear of burglary, assault with a dangerous weapon, and assault by striking, beating, or wounding. The jury acquitted Eagle Bear on one count of assault with a dangerous weapon. He appeals the sufficiency of the evidence on two of the counts, and challenges an evidentiary ruling of the district court.[1] We affirm.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

I.

In December 2004, while on leave from the Marine Corps, Eagle Bear traveled from California to South Dakota with his girlfriend, Sanya Mendez, and her infant son. Eagle Bear spent the Christmas holiday with family and friends on the Rosebud Indian Reservation, where he had grown up. Mendez testified that while driving home after visiting a friend on Christmas night, Eagle Bear became angry at her because he believed the friend had groped her. According to Mendez, Eagle Bear beat her as she drove, punching her in the ribs and face. Mendez testified that upon arriving at their destination (where they spent the night), Eagle Bear took Mendez and her son to the basement and placed a gun in Mendez's mouth. She said that he threatened to kill her and her son if she told anyone about the beating in the car. Based on this incident, the first count of the indictment in this case charged Eagle Bear with unlawfully assaulting Mendez with a dangerous weapon. The jury ultimately acquitted Eagle Bear on this count.

Six days later, on December 31, 2004, the couple had returned to California, and Mendez called police about another beating at the hands of Eagle Bear. In addition to telling police about the incident that day, Mendez informed them of the beating six days earlier in South Dakota. Eagle Bear eventually pled guilty, in a separate proceeding, to making a criminal threat in connection with the California incident.

The second count of the indictment in this case accused Eagle Bear of committing an assault resulting in serious bodily injury on Azure Morrison, Eagle Bear's cousin, on December 24, 2004. The jury convicted Eagle Bear of the lesser-included offense of assault by striking, beating, or wounding Morrison. Eagle Bear does not challenge this conviction on appeal.

The third count charged Eagle Bear with assaulting Arnetta "Rosie" Packard with a dangerous weapon. Eagle Bear returned to the reservation in South Dakota on January 2, 2005, where he resumed a relationship with Packard. For at least a week, the couple remained together, first staying at a motel and later staying in the basement of Melissa Poignee, Eagle Bear's sister. On January 10, 2005, the couple returned to Poignee's basement from a party, and Eagle Bear questioned Packard about her relationships with other men while Eagle Bear served in the military. The prosecution's theory was that Eagle Bear, unhappy with Packard's response, hit her in the face with a barbell from a weight-lifting set.

Packard sustained serious injuries and was taken to the hospital by Poignee. According to Officer Frank Iron Heart of the tribal police, Poignee told him at the hospital that Eagle Bear had beaten Packard. The tribal police traveled to the Poignee home, where they found blood in the basement, including on a barbell. The police also found Eagle Bear asleep in the basement, and arrested him for assault. After the tribal police took Eagle Bear into custody, Packard told Officer Iron Heart that Eagle Bear had beaten her. At trial, however, Poignee denied telling Iron Heart that Eagle Bear had beaten Packard. Packard likewise contradicted her statement to Iron Heart and denied that Eagle Bear perpetrated the assault. Nonetheless, the jury convicted Eagle Bear of assault with a dangerous weapon.

The fourth count of the indictment accused Eagle Bear of committing burglary in the early morning hours of October 28, 2005. Eagle Bear's brother Gerald had just learned that he had been defeated in his bid for a seat on the tribal council. At a party the next morning, Gerald became offended when LeRoy Morrison, Jr., asserted that everyone disliked Gerald and that he had lost the election because he did not show respect for others. This remark upset Gerald, and when he told Eagle Bear about the dispute, the two brothers decided to visit the Morrison home. The Morrisons testified that the Eagle Bear brothers broke into the house, and that Eagle Bear assaulted

LeRoy Morrison, Jr., and his brother Ashley. The jury convicted Eagle Bear of burglary in connection with this incident.

## II.

Eagle Bear challenges the district court's decision to allow Mendez to testify about the beating in California in December 2004. The district court initially concluded that evidence of the California beating was "more prejudicial than probative," and granted Eagle Bear's motion to exclude the evidence. At trial, however, the court decided that Eagle Bear's counsel had opened the door to this inquiry by asking Mendez why she had waited several days to report the alleged beating on December 25 in South Dakota. Eagle Bear argues that the evidence of the California beating was highly prejudicial and was admitted solely to prove his propensity to beat women.

Evidence of other crimes or bad acts is admissible if it is "relevant to a material issue" and if its "potential prejudice does not substantially outweigh its probative value." *United States v. Thomas*, 398 F.3d 1058, 1062 (8th Cir. 2005). We review the admissibility of such evidence for abuse of discretion. *United States v. Voegtlin*, 437 F.3d 741, 745 (8th Cir. 2006). We typically will reverse a conviction only if "such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *Id.* (internal quotation omitted).

We conclude that the district court did not abuse its discretion in admitting evidence of the California beating. Eagle Bear's counsel was persistent in questioning Mendez about why she failed promptly to report the alleged December 25 beating. The cross-examination raised the issue whether Mendez's delay in reporting the incident suggested that she had fabricated the incident. By placing Mendez's failure to report the incident in issue, Eagle Bear's counsel opened the door to testimony regarding the December 31 assault. The latter beating prompted Mendez to report the

-4-

alleged December 25 incident, and thus explained the timing of her report. The disputed evidence thus had a purpose beyond simply proving Eagle Bear's propensity to beat women. The district court properly allowed the government to rehabilitate Mendez's credibility by having her describe the circumstances that prompted her to report the alleged December 25 beating when she did.

In any event, Eagle Bear was not prejudiced by the admission of this testimony. The jury acquitted Eagle Bear of the December 25 beating, and it was for this count that the danger of unfair prejudice was greatest. The district court specifically instructed the jury that the evidence from Mendez "was received for the limited purpose of considering why and when the alleged crime charged in Count I was reported to law enforcement." (R. Doc. 79, Instruction No. 11). Given the attenuated connection between Mendez's description of the December 31 beating and the other charges involving different victims, there is no reasonable likelihood that Mendez's testimony – even if improperly admitted – swayed the jury on any count of conviction.

Eagle Bear next challenges the sufficiency of the evidence to sustain the conviction for assaulting Rosie Packard with a dangerous weapon. Eagle Bear points out that Packard denied at trial that Eagle Bear had assaulted her, and instead testified that she had been beaten by a gang of unidentified women on the night in question. Eagle Bear maintains that without testimony from the victim of the alleged assault, the government cannot prove that he committed assault with a dangerous weapon. "In reviewing for sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and we will overturn a conviction only if no reasonable jury could have concluded that the defendant was guilty beyond a reasonable doubt on each essential element of the charge." *United States v. Kenyon*, 481 F.3d 1054, 1067 (8th Cir. 2007) (internal quotation omitted).

Despite Packard's trial testimony that Eagle Bear did not assault her, we conclude that the jury's verdict was supported by sufficient evidence. Packard

admitted at trial that she reported the assault to Officer Iron Heart at the hospital, where she asserted that Eagle Bear had beaten her after an argument in Poignee's basement. Poignee made a similar report to Iron Heart that implicated Eagle Bear. This evidence was received without objection or limiting instruction, and its probative value may therefore be considered as though the evidence were admissible in law. *United States v. Hugh Chalmers Chevrolet-Toyota, Inc.*, 800 F.2d 737, 739 (8th Cir. 1986). When the tribal police went to Poignee's basement, they found Eagle Bear asleep, and discovered a barbell with small amounts of blood on it. Investigators compared the DNA profile of this blood to Packard's and concluded that the two samples matched. The initial reports to Officer Iron Heart by Packard and Poignee that Eagle Bear committed the assault, combined with discovery of the bloodied barbell in proximity to the sleeping Eagle Bear, support the jury's conclusion. We conclude that a reasonable jury could have relied on this evidence to convict Eagle Bear of assaulting Packard with a dangerous weapon, and rejected Packard's contrary trial testimony as incredible.

Eagle Bear also challenges the sufficiency of the evidence presented against him with respect to the burglary count. Federal law incorporates state law with respect to burglaries committed in Indian country. 18 U.S.C. § 1153. The elements of burglary under South Dakota law require proof that the perpetrator unlawfully entered or unlawfully remained in an occupied structure with intent to commit a crime. South Dakota law requires an unlawful entry, but not necessarily a forced entry, to violate the statute. S.D. Codified Laws § 22-32-1; *State v. Peck*, 150 N.W.2d 725, 727 (S.D. 1967). Eagle Bear argues that there was insufficient evidence on the element of unlawful entry or remaining, because he was legally allowed into the Morrison house.

Four members of the Morrison household testified that the front door of their house was locked, and that Eagle Bear and his brother entered without permission. Eagle Bear counters that police found no evidence of forcible entry at the Morrison

residence, that an investigating officer believed the Morrisons had left the door unlocked, and that his brother, Gerald Eagle Bear, testified that the Morrisons had allowed the pair into the house.

When presented with conflicting testimony, of course, the jury was entitled to weigh the credibility of the witnesses and determine the disputed facts. Whether or not the door to the Morrison home was locked, the jury reasonably could have credited the testimony of the Morrisons that none of them granted permission for the Eagle Bear brothers to enter the house. This evidence was thus sufficient to establish an unlawful entry by Eagle Bear.

*　　*　　*

For the foregoing reasons, the judgment of the district court is affirmed.

_____